## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE GARY S. KATZMANN**

| | |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş. | |
| Plaintiff, | |
| v. | |
| UNITED STATES INTERNATIONAL TRADE COMMISSION, | Ct. No. 22-cv-00351 PUBLIC VERSION |
| Defendant, | |
| and | |
| UNITED STATES STEEL CORPORATION, et. al., | |
| Defendant-Intervenors. | |

## RULE 56.2 MOTION AND BRIEF IN SUPPORT OF EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş. FOR JUDGMENT ON THE AGENCY RECORD

David L. Simon, Esq.
Mark B. Lehnardt, Esq.

LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Tel.: (202)481-9000
Email: DLSimon@DLSimon.com

Date: July 19, 2022                   *Counsel to Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

MOTION.............................................................................................................................1

INTRODUCTION ..............................................................................................................2

STATEMENTS PURSUANT TO RULE 56.2(c)(1).........................................................4

    I.   Administrative Determination To Be Reviewed.........................................................4

    II.  Issues Presented .........................................................................................................4

    III. Relief Sought .............................................................................................................5

STATEMENT OF FACTS .................................................................................................5

    I.   Factual Background ....................................................................................................5

    II.  Legal Background .....................................................................................................14

STANDARD OF REVIEW ..............................................................................................16

SUMMARY OF THE ARGUMENT ...............................................................................17

ARGUMENT ....................................................................................................................18

    I.   The Commission's Decision Must Be Remanded Because The Statutory
        Requirement Of Continuance Or Recurrence Of Material Injury Cannot
        Be Met Here, Where Appeal Has Rendered Null The Investigation
        Negligibility Decision................................................................................................18

        A.   Judicial Opinions Apply Retroactively ...............................................................18

        B.   A Finding Of Likelihood Of Continuation Or Recurrence of Material
            Injury Requires A Condition Precedent Of Prior Material Injury...........................19

        C.   Retroactive Application Of Çolakoğlu's Exclusion Requires A
            Retroactive Change To The Investigation AD Negligibility Decision ....................22

    II.  The Commission's Decision Must Be Remanded Because The
        Commission Improperly Included Non-Subject Imports In Its Cumulation
        Analysis for Turkey ..................................................................................................24

        A.   The Commission's Cumulation Analysis Was Tainted By The Inclusion
            Of Significant Volumes Of Non-Subject Imports.....................................................24

        B.   Other Aspects Of The Commission's Cumulation Analysis Were
            Tainted By The Commission's Bias.........................................................................28

        C.   The Commission's Tainted Analysis Cannot Be Reconciled With Its
            Decision Not To Cumulate Imports From Brazil......................................................31

CONCLUSION.................................................................................................................36

# TABLE OF AUTHORITIES

## Cases

*Allegheny Ludlum Corp. v. United States*, 475 F. Supp. 2d 1370 (Ct. Int'l Trade 2006) ................................................................................................................31

*Am. Lamb Co. v. United States*, 785 F.2d 994 (Fed. Cir. 1986) ...............................16

*Buffington v. McDonough*, 143 S. Ct. 14, 214 L. Ed. 2d 206 (2022) ........................17

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ..............................................................................16

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018) .............................................................................................8

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) .............................................................................................8

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 415 F. Supp. 3d 1216 (Ct. Int'l Trade 2019) .............................................................................................8

*Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020)................................................................................3, 8, 18

*Loper Bright Enters. v. Raimondo*, 216 L. Ed. 2d 414 (Sup. Ct. 2023)....................17

*Michigan v. EPA*, 576 U.S. 743, 135 S. Ct. 2699, 192 L. Ed. 2d 674 (2015) ...........17

*Nucor Corp. v. United States*, 296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018) ..............8

*Nucor Corp. v. United States*, 601 F.3d 1291 (Fed. Cir. 2010) ..........................14, 31

*SKF USA, Inc. v. United States*, 512 F.3d 1326 (Fed. Cir. 2007)..............................18

*Skidmore v Swift & Co*. 323 U.S. 134, 89 L.Ed. 124, 65 S.Ct. 161(1944) ................17

## Statutes

19 U.S.C § 1675(c)(1)..........................................................................................20, 22

19 U.S.C. § 1516a(b)(1)(B)(i)..............................................................................16, 17

19 U.S.C. § 1673 .......................................................................................................14

19 U.S.C. § 1673b(a) .................................................................................................20

19 U.S.C. § 1673d(b)(1)(B) ......................................................................14, 20

19 U.S.C. § 1675a(a)(1) .....................................................................14, 18, 21

19 U.S.C. § 1675a(a)(1)(A) ............................................................................14

19 U.S.C. § 1675a(a)(1)(B) ............................................................................14

19 U.S.C. § 1675a(a)(1)(C) ............................................................................14

19 U.S.C. § 1675a(a)(2) .................................................................................14

19 U.S.C. § 1675a(a)(3) .................................................................................14

19 U.S.C. § 1675a(a)(4) .................................................................................15

19 U.S.C. § 1675a(a)(5) .................................................................................15

19 U.S.C. § 1675a(a)(7) .................................................................................15

19 U.S.C. § 1677(24) ......................................................................................6

19 U.S.C. § 3512(d) ......................................................................................20

## Other Authorities

*Continuation*, Merriam-Webster's Dictionary, https://www.merriam-
    webster.com/dictionary/continuation) (last visited July 12, 2023) ........................20

*Continue*, Merriam-Webster's Dictionary, https://www.merriam-
    webster.com/dictionary/continue) (last visited July 12, 2023) ...........................21

*Recurrence*, Merriam-Webster's Dictionary, https://www.merriam-
    webster.com/dictionary/recurrence (last visited July 12, 2023) ..........................21

*Statement of Administrative Action accompanying the Uruguay Rounds
    Agreements Act*, H.R. Rep. No. 103-316, vol. I, *reprinted in* 1994
    U.S.C.C.A.N. 4040 ................................................................15, 20, 21

## Administrative Determinations

*Certain Hot-Rolled Flat-Rolled Carbon-Quality Steel Products From Brazil,
    Japan, and Russia*, Inv. Nos. 701-TA-384 and 731-TA-806-808, ITC Pub. 3767
    (April 2005) .........................................................................15

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea,  the
    Netherlands, Turkey, and  the United Kingdom*, Inv. Nos. 701-TA-545-547 &
    731-TA-1291-1297 (prelim), USITC Pub. 4570 (Oct. 2015) ................................6

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Sept. 29, 2016) ...............................................................................................................7, 19

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Final), USITC Pub. 4638 (Sept. 2016).................................7, 19

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (Int'l Trade Comm'n Aug. 18, 2015).......................5, 16

*Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016)...................................7

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair Value Investigations*, 80 Fed. Reg. 54,261 (Dep't of Commerce Sept. 9, 2015)...............................................................5

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53,428 (Dep't of Commerce Aug. 12, 2016) ...............................................................6

*Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15, 2020) ..........................................................................................................9

*Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433 (Dep't of Commerce Aug. 12, 2016) ...............................................................6

*Hot-Rolled Flat-Rolled Carbon-Quality Steel Products from Brazil, Japan, and Russia*, Inv. 701-TA-384 and 731-TA-806-807 (Second Review) (June 2011), USITC Pub. No. 4237 ............................................................................................31

*Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, Netherlands, Russia, Turkey, and the United Kingdom; Scheduling of Full Five-Year Reviews*, 87 Fed. Reg. 36,343 (Int'l Trade Comm'n June 16, 2022)....................10

*Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the
    Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year
    Reviews*, 86 Fed. Reg. 49,057 (Int'l Trade Comm'n Sep. 1, 2021)........................................10

*Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands,
    Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167
    (Int'l Trade Comm'n Dec. 2, 2022) ...............................................................................4, 12, 13

*Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands,
    Russia, South Korea, Turkey, and the United Kingdom,* Inv. Nos. 701-TA-45-
    546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review),
    USITC Pub. 5380 (Nov. 2022) ......................................................................................4, 12, 13

*Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a
    Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review
    or Reconsideration Proceeding and the United Kingdom*, 87 Fed. Reg. 73,331
    (Int'l Trade Comm'n Nov. 29, 2022)...............................................................................12, 19

*Hot-Rolled Steel Flat Products From Turkey; Request for Comments Regarding
    the Institution of a Section 751(b) Review Concerning the Commission's
    Affirmative Determination*, 86 Fed. Reg. 68,512 (Int'l Trade Comm'n Dec. 2,
    2021) ......................................................................................................................................10

*Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, China, and the
    United Arab Emirates*, 731-TA-1131 (January 2015), USITC Pub. No. 4512 ....................31

*Purified Carboxymethylcellulose from Finland, Mexico, Netherlands, and
    Sweden*, Inv. 731-TA-1085, 1087 (May 2011), USITC Pub. No. 4225 ...............................31

*Public Version*

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE GARY S. KATZMANN**

| | |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNATIONAL TRADE COMMISSION,<br><br>    Defendant,<br><br>and<br><br>UNITED STATES STEEL CORPORATION, et. al.,<br><br>    Defendant-Intervenors. | Ct. No. 22-cv-00351<br>PUBLIC VERSION |

## RULE 56.2 MOTION AND BRIEF IN SUPPORT OF EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş. FOR JUDGMENT ON THE AGENCY RECORD

### MOTION

Ereğli Demir Ve Çelik Fabrikalari T.A.Ş. ("Erdemir"), respectfully moves for judgment on the agency record regarding the decision of the International Trade Commission ("ITC" or "Commission") to continue the antidumping duty ("AD") order on hot-rolled steel from Turkey and submits this brief in support thereof.  For the reasons set forth below, Erdemir respectfully requests that this Court remand this case to the Commission for reconsideration, consistent with the decision of this Court.

## INTRODUCTION

The Commission unlawfully ignored the full effect of this Court's decision finding imports from Turkish hot-rolled steel producer, Çolakoğlu Metalurji A.S. ("Çolakoğlu"), were fairly traded in Çolakoğlu's appeal of the decision by the U.S. Department of Commerce ("Commerce"). *Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2020) ("*Erdemir AD IV*"). This decision made the AD investigation of hot-rolled steel from Turkey identical to the parallel countervailing duty ("CVD") investigation of hot-rolled steel from Turkey because Çolakoğlu's imports were also found fairly traded (not subsidized) in that investigation. Because Çolakoğlu was found to be unsubsidized during the CVD investigation, the Commission categorized Çolakoğlu's imports as non-subject imports for the CVD invesetigation and excluded those imports from its analysis of whether remaining subject Turkish imports were negligible. The Commission found that subject Turkish imports were negligible for the CVD investigation, and terminated the CVD investigation.

When Çolakoğlu was found on appeal not be selling at less than fair value, Çolakoğlu's was excluded from the AD order. *Id.* Erdemir asked the Commission to give effect to this change: because the AD and CVD investigation records were not identical in excluding Çolakoğlu's non-subject imports, the AD investigation should also be terminated, voiding the AD order. But the Commission declined.

In the sunset review, the Commission acknowledged that Çolakoğlu was now excluded from the AD order and its imports must not be treated as non-subject imports – that is, not included in the Commission's analysis of subject Turkish imports. But the Commission included Çolakoğlu's non-subject import data with Turkish subject import data when analyzing subject Turkish imports.

The Commission's error had two effects that must be remedied by this Court. First, the Commission should have deemed subject Turkish imports in the AD investigation negligible. If the negligible Turkish imports did not lead to retroactive termination of the AD investigation and voiding of the AD order, the Commission still should have recognized that the condition of negligible subject Turkish imports during the investigation was non-injurious. With this non-injurious prior condition, the Commission – as a matter of law – could not find a likelihood of "continuation or recurrence of material injury." The statutory language, "continuation or recurrence of material injury," requires a condition precedent of prior material injury which no longer exits for subject Turkish imports.

Second, the Commission's failure to exclude Çolakoğlu's non-subject imports from total subject Turkish imports for all purposes during the sunset review tainted the Commission's cumulation analysis. Rather than evaluate negligible levels of subject Turkish imports during the baseline comparison with the investigation, the Commission began its analysis with erroneous baseline data including non-subject imports. Using non-subject data to evaluate subject imports is not in harmony with law. Moreover, the Commission's reliance on data overrun by non-subject Turkish imports cannot provide record support for its conclusions about subject Turkish imports. Further, Congress adopted the explanation that the law intended that negligible imports not be cumulated.

The two effects of the Commission's error prejudiced Erdemir. The Commission proceeded with the sunset review despite the absence of the required condition precedent, and based upon analyses including Çolakoğlu's non-subject imports, decided to cumulate subject Turkish imports with subject imports of other countries when evaluating the likelihood of continuation or recurrence of material injury. Erdemir respectfully requests that this court

conclude that, as a matter of law, the AD order on hot-rolled steel cannot be continued because negligible subject imports during the investigation preclude the condition precedent of material injury required to continue the AD order.  Erdemir alternatively requests that the Court remand this case for the Commission to reconsider its decision after excluding Çolakoğlu's non-subject imports for all purposes, that is from both investigation and sunset review data of subject Turkish imports.

## STATEMENTS PURSUANT TO RULE 56.2(c)(1)

### I.  Administrative Determination To Be Reviewed

Plaintiff seeks judicial review of the Commission's decision to continue the antidumping duty (AD) order on Turkish hot-rolled steel flat products in *Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-45-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub.5380 (Nov. 2022) ("*Sunset Publication*") (P.R.355); and *Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (Int'l Trade Comm'n Dec. 2, 2022) ("*Sunset Final*").

### II.  Issues Presented

The issues raised in this case relate to the effect of the Commission's improper inclusion of non-subject imports in its general sunset analysis and its cumulation analysis.

> **Issue 1**:  To continue an antidumping or countervailing duty order, the Commission must find that revocation of the order would be likely to lead to a continuation or recurrence of material injury. The plain language of the statute, "continuation or recurrence of material injury," requires a prior condition of material injury. Subject Turkish imports were negligible in the investigation as a result of this Court's ruling on appeal that one Turkish exporter's sales were fairly traded, and should be excluded from the order.  Is

a prior condition of material injury impossible, as a matter of law, when the prior condition is negligible imports?

**Short Answer**:  As a matter of law, the required condition precedent, of prior material injury, is impossible in the circumstances of this case, where subject Turkish imports were negligible during the period of investigation.  Accordingly a conclusion that revocation of the antidumping duty order on hot-rolled steel from Turkey is likely to lead to a continuation or recurrence of material injury is contrary to law.

**Issue 2**:  The Commission may not cumulatively assess the volume and effect of subject imports likely to have no discernible adverse impact on the domestic industry.  In its analysis of whether Turkish subject imports would have no discernible adverse impact, the Commission relied on data including related to non-subject imports.  Is the Commission's decision about subject-imports supported by substantial evidence and in accordance with law?

**Short Answer**:  No, the Commission's decision cannot be supported by substantial evidence and in accordance with law when it relies on data for non-subject merchandise.

### III. Relief Sought

Plaintiff respectfully requests that this Court enter judgment holding the Commission's decision is unlawful as not supported by substantial evidence or in accordance with law and remanding the matter to the ITC for a redetermination consistent with the decision of this Court.

## STATEMENT OF FACTS

### I.  Factual Background

Commerce and the Commission initiated antidumping (AD) and countervailing duty (CVD) investigations of hot-rolled steel from Turkey in August and September 2015.  *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (Int'l

Trade Comm'n Aug. 18, 2015) ("*Injury Initiation*"); *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair Value Investigations*, 80 Fed. Reg. 54,261 (Dep't of Commerce Sept. 9, 2015), ("*AD Initiation*"); *Certain Hot-Rolled Steel Flat Products From Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54,267 (Dep't of Commerce Sept. 9, 2015) ("CVD Initiation").

The Commission preliminarily found that imports from Turkey were above the 3% threshold for exclusion from investigation on grounds of negligibility. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (prelim), USITC Pub. 4570 (Oct. 2015) ("*Injury Prelim*"), at 14; 19 U.S.C. § 1677(24).

The Department of Commerce, however, ultimately found that one of the two mandatory respondents, Çolakoğlu, was not subsidized, and Çolakoğlu was therefore excluded from Commerce's final determination in the CVD investigation, leaving Erdemir as the only Turkish producer found to have been subsidized. *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433, 53,434-53,435 (Dep't of Commerce Aug. 12, 2016) ("*Turkey CVD Final*").

In the companion AD investigation, Commerce calculated an above *de minimis* dumping margin for Çolakoğlu as well as for Erdemir. *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53,428, 53,429 (Dep't of Commerce Aug. 12, 2016) ("*Turkey Final LTFV*").

Because Commerce found that Çolakoğlu did not receive subsidies, the Commission's final injury analysis excluded Çolakoğlu's unsubsidized imports. In final comments before the

Commission, Domestic Interested Parties (DIPs) argued in favor of finding Turkish subject imports injurious regardless of whether Çolakoğlu's unsubsidized imports were excluded.  The Commission rejected those arguments, determining that, with the exclusion of Çolakoğlu unsubsidized imports from subject merchandise, the Turkish subsidized import volume was below negligible levels and accordingly terminated the injury investigation of subsidized imports from Turkey.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Sept. 29, 2016) ("*HRS ITC Notice*"); *see also,* P.R.81, *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Final), USITC Pub. 4638 (Sept. 2016) ("*HRS ITC Final*"), at 1 & n.2, 3, 12-14 ("We consequently determine that subsidized subject imports from Turkey are negligible and terminate the countervailing duty investigation on hot-rolled steel from Turkey.").

In the AD injury case, because Çolakoğlu was found to have an above *de minimis* dumping margin, the Commission included Çolakoğlu's imports with all Turkish imports as total subject imports from Turkey, found subject AD imports from Turkey were not negligible, and found material injury by reason of subject imports from Turkey and other subject countries.  *See* P.R.81, *HRS ITC Final*, USITC Pub. 4638, at 1, 3, 13 ("{I}mports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation. Hot-rolled steel imports from Turkey that are subject to the antidumping duty investigation were 7.4 percent of total imports during this period and therefore were above negligible levels.").  Consequently, Commerce entered a dumping order on hot-rolled steel from Turkey.  *Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final*

*Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016) ("*AD Order*").

The Domestic Interested Parties (DIPs) appealed the Commission's negative injury determination, based upon negligible imports, in relation to the Turkish CVD investigation. DIPs had raised several issues challenging the negligibility determination before the Commission and raised them again before this Court.  In that appeal, this Court rejected all of DIPs arguments and affirmed the Commission's negligibility determination.  *Nucor Corp. v. United States*, 296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018).

Çolakoğlu and Erdemir appealed Commerce's final determination of sales at less than fair value (the *Turkey Final LTFV* and *AD Order*).  For Çolakoğlu's appeal, this Court concluded that Commerce's decisions relating to duty drawback and the international freight expenses were unlawful as not supported by substantial evidence or reasoned explanations and, after three remands over four years, affirmed Commerce's redetermination on remand that Çolakoğlu's imports were not sold at less than fair value (that is, they were not dumped, they were fairly traded).  *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F. Supp. 3d 1297, 1314-1320, 1328 (Ct. Int'l Trade 2018) ("*Erdemir AD I*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 357 F. Supp. 3d 1325, 1329-1334, 1336 (Ct. Int'l Trade 2018) ("*Erdemir AD II*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 415 F. Supp. 3d 1216, 1222-32 (Ct. Int'l Trade 2019)("*Erdemir AD III*"); *Erdemir AD IV*, 435 F. Supp. 3d at 1380 ("The changes resulted in an estimated weighted-average dumping margin of zero percent for Çolakoğlu and, thus, Çolakoğlu will be excluded from the relevant antidumping duty order.").

Commerce therefore excluded Çolakoğlu from the antidumping duty order ("*AD Order*")

retroactively to the original suspension of liquidation in the underlying investigation (*i.e.,* to the

date of the original preliminary determination).  *Certain Hot-Rolled Steel Flat Products From*

*Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the*

*Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended*

*Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and*

*Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in*

*Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15, 2020) ("*Turkey Partial AD*

*Revocation*").

In May 2021, Erdemir asked the Commission to reconsider its injury finding as to Turkey

in light of Çolakoğlu's exclusion from the AD order.  P.R.1, *Erdemir Request for*

*Reconsideration*.  Erdemir believed that, as a consequence of the determination that Çolakoğlu's

sales were fairly traded during the period of investigation (POI), but for Commerce's initial

unlawful decisions, the volume of subject imports considered by the Commission would have

been below the negligibility threshold for the AD injury investigation, just as they had been for

the CVD injury investigation:  there would be no AD order on hot-rolled steel flat products from

Turkey.  *Id.*  In other words, if Commerce had treated Çolakoğlu lawfully from the beginning,

the Commission's decision in the dumping case would have been identical to its decision in the

CVD case, *i.e.*, negative, since the universe of subject imports in both cases would have been

identical.  *Id.*

The Commission took no action on that request.

In July, 2021, Erdemir again asked the Commission to reconsider its injury finding in

light of Çolakoğlu's exclusion.  P.R.2, *Erdemir Letter in Support of Request*.

Again, the Commission took to action.

In June, 2022, the Commission published notice of scheduling for a full five-year review (sunset review) of hot-rolled steel from Turkey and other countries to determine whether revocation of the orders would lead to continuation or recurrence of injury.  *See Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, Netherlands, Russia, Turkey, and the United Kingdom; Scheduling of Full Five-Year Reviews*, 87 Fed. Reg. 36,343 (Int'l Trade Comm'n June 16, 2022) ("*Sunset Scheduling Notice*").

The Commission published the initiation of the sunset review on September 1, 2021. *Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (Int'l Trade Comm'n Sep. 1, 2021) ("*Sunset Institution*").

Also in September 2021, Erdemir supplemented its earlier request, noting that the Federal Circuit had dismissed the petitioners' appeal of the Çolakoğlu AD case, and thus Çolakoğlu's exclusion from the order had become final and conclusive as to all parties.  In this September 2021 submission, Erdemir requested that the Commission conduct a changed circumstances review (CCR) as to the continued viability of the AD order on HRS from Turkey, and, in the alternative, requested that the Commission exercise its discretion to conduct a reconsideration proceeding.

In December 2021, the Commission published a request for comments on whether to initiate a CCR, and on whether a CCR addressing this issue could be conducted as part of the sunset review, stating that it was likely to conduct the CCR "on an overlapping basis with the {sunset} review."  *Hot-Rolled Steel Flat Products From Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative*

*Determination*, 86 Fed. Reg. 68,512, 68,513 (Int'l Trade Comm'n Dec. 2, 2021) ("Request for Comments").

     Erdemir filed comments in response to the Request for Comments, demonstrating that the legal standard for initiating a CCR was satisfied and that the Commission should conduct a CCR. P.R.109, *Erdemir Cmts. on CCR Institution*.  Erdemir also asserted that it would be preferable for the Commission to address the issue in a reconsideration proceeding rather than a CCR or the sunset review, because a reconsideration gives the Commission more latitude in considering changes retroactively.  *Id.*

     The Commission conducted its sunset review, receiving pre- and post-hearing briefs in September 2022.  Erdemir argued that the Commission should (i) reconsider its initial AD injury determination in light of the exclusion of Çolakoğlu from the AD order retroactive to Commerce's preliminary determination, (ii) find subject imports from Turkey negligible for AD purposes just as it had for CVD purposes, and (iii) retroactively terminate the AD injury investigation of subject imports from Turkey.  P.R.261/C.R.267, *Erdemir Pre-hearing Br.*; P.R.290, *Erdemir Witness Testimony*; P.R.323/C.R.292, *Erdemir Post-hearing Br.*; P.R.322, *Erdemir Bracketing Corrections*; P.R.342/C.R.326, *Erdemir Final Cmts*.

     As for a reconsideration proceeding, Erdemir argued that this could be folded into the sunset proceeding because it relied on the facts of record before the Commission in the sunset review.  P.R.261/C.R.267, *Erdemir Pre-hearing Br.*, at 11-14; P.R.323/C.R.292, *Erdemir Post-hearing Br.*, at 2-3, Answers to Comm'n Questions at 5-10, 14-15.

     On the merits of the sunset review aside from Çolakoğlu exclusion issue, Erdemir demonstrated that imports from Turkey should not be cumulated with imports from other countries in the sunset review because imports from Turkey are not likely to have any discernible

impact on the U.S. market.  P.R.261/C.R.267, *Erdemir Pre-hearing Br.*, at 18-24;

P.R.323/C.R.292, *Erdemir Post-hearing Br.*, at 6-15 & Exs.2-5; P.R.342/C.R.326, *Erdemir Final*

*Cmts.*, at 2-4.  A negligible volume of subject imports entered the U.S. during the investigation

(when imports from Çolakoğlu are excluded), and imports from Turkey continued at negligible

levels.  *Id.*  Further, Turkey's strong home-market demand and significant third-country export

market establish that Turkey (minus Çolakoğlu) has never been focused on the U.S.  *Id.*

The Commission issued a decision on November 23, 2022, declining to initiate either a

CCR or a reconsideration proceeding.  *Hot-Rolled Steel Flat Products From Turkey; Denial of*

*Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b)*

*Review or Reconsideration Proceeding and the United Kingdom*, 87 Fed. Reg. 73,331 (Int'l

Trade Comm'n Nov. 29, 2022) ("*CCR/Reconsideration Denial*").

On November 29, 2022, almost a week after the Commission issued its decision denying

both the request for reconsideration and the request for a CCR, the Commission issued its sunset-

review final determination and its explanation for its decision.  *See Sunset Final*, 87 Fed. Reg.

74,167; P.R.355, *Sunset Publication*, USITC Pub.5380, C.R.336, *Commission Views*.  The

Commission published its decision on December, 2, 2022.  *Sunset Final*, 87 Fed. Reg. 74,167.

In the sunset review, the Commission acknowledged that Çolakoğlu was excluded from

the AD order and thus was not a producer of subject merchandise.  P.R.355, *Sunset Publication*,

USITC Pub.5380 at 45 & n.276 ("{Çolakoğlu} is no longer a producer of subject merchandise

and data for it is not included in the data for subject imports from Turkey during the current

review").  The Commission rejected Erdemir's cumulation arguments, however, but based on

data that erroneously and unlawfully continued to include Çolakoğlu's non-subject imports in the

baseline data from the original investigation (thus making an improper comparison) and failed to

accurately assess the Turkish market.  P.R.355, *Sunset Publication*, USITC Pub.5380 at 45-48 & nn.275,278,291; C.R.336, *Commission Views*, at 64-68 & nn.275,278,291.  The Commission cumulated Turkish subject imports with other subject imports and found material injury likely to continue or recur.  P.R.355, *Sunset Publication*, USITC Pub.5380 at 34-35, 64-68.

The Commission also acknowledged that Erdemir had raised arguments in the sunset review, the request for CCR, and the request for reconsideration that the Commission could reconsider the original investigation negligibility decision in the sunset review.  P.R.355, *Sunset Publication*, USITC Pub.5380 at 26 and n.132, I-7 & n.30.  But the Commission declined to address the arguments in the sunset review, explaining that the Erdemir also raised the arguments in "proceedings outside of these {sunset} reviews and the Commission has addressed them there" (where the Commission declined to initiate proceedings to address Erdemir's arguments). *Sunset Final*, 87 Fed. Reg. 74,167, and P.R.355, *Sunset Publication*, USITC Pub.5380 at 48 & n.298.

The Commission published its final decision in the sunset review, continuing the AD order on hot-rolled steel from Turkey.  *See Sunset Final*, 87 Fed. Reg. 78,642.

Erdemir timely appealed the Commission's final determination by filing a summons and complaint within 30 days of publication of the *Sunset Final*.[1]  *See* ECF 1, Summons, ECF 4, Complaint.

---

[1] Erdemir separately appealed the Commission's refusal to reconsider the negligibility determination in its original investigation, and also its refusal to conduct a CCR.  *See Eregli Demir ve Celik Fabrikalari T.A.S. v. United States International Trade Commission*, Ct. No. 22-cv-00349 (reconsideration); *Eregli Demir ve Celik Fabrikalari T.A.S. v. United States International Trade Commission*, Ct. No. 22-cv-00350.  Both these cases are currently pending before the Honorable Timothy M. Reif.

*22-351 - Rule 56.1 Motion - PUBLIC*

## II. Legal Background

In an investigation, if the U.S. Department of Commerce finds that certain "foreign merchandise is being, or is likely to be sold, in the United States at less than fair value, and … the Commission determines that … an industry in the United States— …is materially injured, or… is threatened with material injury… by reason of imports of that merchandise," then Commerce shall enter an AD order imposing AD duties on that merchandise.   19 U.S.C. § 1673. But if the investigation reveals "that imports of the subject merchandise are negligible, the investigation shall be terminated." 19 U.S.C. § 1673d(b)(1)(B).  The Federal Circuit has acknowledged that "overbroad cumulation may unreasonably assign culpability to imports that are not likely to contribute to a continuation or recurrence of material injury."  *Nucor Corp. v. United States*, 601 F.3d 1291, 1296 (Fed. Cir. 2010).

In a sunset review, the Commission must "determine whether revocation of an order . . . would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(1).  The Commission's evaluation "shall consider the likely volume, price effect, and impact of imports of the subject merchandise on the industry." *Id.*  Among relevant considerations are "prior injury determinations, including the volume, price effect, and impact of imports of the subject merchandise on the industry before the order was issued," 19 U.S.C. § 1675a(a)(1)(A), also whether "whether any improvement in the state of the industry is related to the order," 19 U.S.C. § 1675a(a)(1)(B), and "whether the industry is vulnerable to material injury if the order is revoked."  19 U.S.C. § 1675a(a)(1)(C).

The Commission's volume effects analysis of "whether the likely volume of imports of the subject merchandise would be significant if the order is revoked," must consider "any likely increase in production capacity or existing unused production capacity," along with "existing inventories … or likely increases in inventories," barriers to importation "into countries other

than the United States," and "the potential for product-shifting.  19 U.S.C. § 1675a(a)(2).  The

Commission's price effects analysis must consider the likelihood of "significant price

underselling," and whether subject imports "would have a significant depressing or suppressing

effect on the price of" domestically-produced merchandise.  19 U.S.C. § 1675a(a)(3).  Finally,

the Commission's evaluation of the impact on the domestic industry includes (but is not limited

to), whether subject imports would lead to "likely declines in output, sales, market share, profits,

productivity, return on investments," capacity utilization; "likely negative effects on cash flow,

inventories, employment, wages, growth, ability to raise capital, and investment"; and the "likely

negative effects on the existing development and production efforts of the industry."  19 U.S.C. §

1675a(a)(4).

When considering what is a reasonably foreseeable time, "the Commission shall consider

that the effects of revocation or termination may not be imminent, but may manifest themselves

only over a longer period of time."  19 U.S.C. § 1675a(a)(5).  This period may be relatively

shorter when commodity products, such as hot-rolled steel, are involved.  *See Statement of

Administrative Action accompanying the Uruguay Rounds Agreements Act*, H.R. Rep. No. 103-

316, vol. I ("*SAA*"), at 887, *reprinted in* 1994 U.S.C.C.A.N. 4040 at 4211; *see also Certain Hot-

Rolled Flat-Rolled Carbon-Quality Steel Products From Brazil, Japan, and Russia*, Inv. Nos.

701-TA-384 and 731-TA-806-808, ITC Pub. 3767 (April 2005), at 14 n.67 ("in view of the

{commodity} nature of this {hot-rolled steel} industry and market, we have given significantly

greater weight to developments likely to occur {within 18-20 months} in 2005 and 2006 than to

those pertaining to later dates").

In determining the effect of revocation, "the Commission may cumulatively assess the

volume and effect of imports of the subject merchandise from all countries" when investigations

were "initiated on the same day, if such imports would be likely to compete with each other and with domestic like products." 19 U.S.C. § 1675a(a)(7).  But "the Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry." *Id*.  Further, the *SAA* explains that the trade law requires that "negligible or *de minimis* imports not be cumulated."  *SAA*, at 849, 1994 U.S.C.C.A.N., at 4183.

Here, the investigations of hot-rolled steel from Australia, Brazil, Japan, the Netherlands, South Korea, Turkey, and the United Kingdom were initiated on the same day.  *Injury Initiation*, 80 Fed. Reg. 50,028; *AD Order*, 81 Fed. Reg. 67,962.  For cumulation decisions, "the Commission generally considers the likely volume of subject imports and the likely impact of those imports on the domestic industry within a reasonably foreseeable time if the orders are revoked. Our analysis for each of the subject countries takes into account, among other things, the nature of the product and the behavior of subject imports in the original investigations."

## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

For issues of statutory construction, this Court must first evaluate "whether Congress has spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). "If the intent of Congress is clear, that is the end of the matter." *Id.*, at 842.  If the intent of Congress is not clear, this Court must decide whether the Commission's interpretation "is based on a permissible construction of the statute."  *Id.* at 843.

Although the law of the Circuit generally gives "substantial weight to an agency's interpretation of a statute it administers," *Am. Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed. Cir. 1986), the amount of deference granted to an agency's interpretation is unclear given recent statements in Supreme Court decisions, including that court's current docket.  *See Buffington v. McDonough*, 143 S. Ct. 14, 214 L. Ed. 2d 206, 207-214 (2022) (Gorsuch, J., dissenting); *Michigan v. EPA*, 576 U.S. 743, 760-764, 135 S. Ct. 2699, 192 L. Ed. 2d 674 (2015) (Thomas, J., concurring) (questioning constitutionality of *Chevron* deference); *see also Loper Bright Enters. v. Raimondo*, 216 L. Ed. 2d 414 (Sup. Ct. 2023) (granting certiorari review of case decided upon *Chevron* deference).  The Commission is at least granted *Skidmore* deference "to claim respect according to its persuasiveness," or according to its "power to persuade." *See Skidmore v Swift & Co*. 323 U.S. 134, 140, 89 L.Ed. 124, 65 S.Ct. 161(1944).

## SUMMARY OF THE ARGUMENT

The Commission failed to properly consider the effect of the court's ruling that imports from Çolakoğlu were fairly traded, and thus were excluded from the order.  Although the Commission acknowledged the court's decision in Çolakoğlu's AD appeal and excluded Çolakoğlu's non-subject imports in the Sunset review period of review ("POR") (that is, 2016-2021), the Commission erroneously kept Çolakoğlu's non-subject imports in the data it relied upon from the original investigation period of investigation ("POI") (that is, 2013-2015).  The Commission should have revised its consideration of subject imports during the POI to exclude non-subject imports from Çolakoğlu for all purposes of its evaluation, including baseline comparisons of subject import volumes from the investigation.  The failure to exclude Çolakoğlu's non-subject imports for all purposes tainted the Commission's analysis, resulting in a decision that is not supported by substantial evidence and otherwise is contrary to law.

*Public Version*

## ARGUMENT

The Commission improperly included non-subject volume when it considered volume effect comparing subject import volume during the period of investigation to subject import volume during the sunset period of review.  This error invalidates the Commission's analysis and decisions regarding whether Turkish subject imports have no discernible impact, and whether injury from those imports is likely to continue or recur if the order is terminated.

### I.   The Commission's Decision Must Be Remanded Because The Statutory Requirement Of Continuance Or Recurrence Of Material Injury Cannot Be Met Here, Where Appeal Has Rendered Null The Investigation Negligibility Decision

The Commission's decision must be remanded because the statutory requirement of continuance or recurrence of material injury cannot be met here, where appeal has rendered null the investigation negligibility decision.  To continue an antidumping duty order, the Commission must find that revocation of the order is likely to lead to continuation or recurrence of material injury.  19 U.S.C. § 1675a(a)(1).   Here, there could be no continuation or recurrence of material injury because the investigation should have concluded with a finding that subject imports from Turkey were negligible.  With Çolakoğlu's non-subject volume excluded from POI data, the Commission should have decided, as a matter of law, that Turkey's POI import volume was negligible, and thus that Turkey could not be part of any determination of continuation or recurrence of material injury because there could be no previous material injury finding in the investigation.

### A.  Judicial Opinions Apply Retroactively

It is a fundamental rule that judicial opinions apply retroactively.  *See SKF USA, Inc. v. United States*, 512 F.3d 1326, 1330 (Fed. Cir. 2007) ("judicial interpretations of existing statutes and regulations are routinely given retroactive application on the theory that courts do not make

new law but simply state what the statutes and regulations meant before as well as after the court's decision.").  This rule applies equally to AD and CVD appeals, thus – in the case of Çolakoğlu – requiring Çolakoğlu's exclusion from the AD order.  *Erdemir AD IV*, 435 F. Supp. 3d at 1380 ("The changes resulted in an estimated weighted-average dumping margin of zero percent for Çolakoğlu and, thus, Çolakoğlu will be excluded from the relevant antidumping duty order.").  Although the Commission denies that this Court's ruling can be addressed in a reconsideration or CCR, *CCR/Reconsideration Denial*, 87 Fed. Reg. 73,331, the Commission cannot deny the retroactive effect of a judicial decision rendering Çolakoğlu's import volume excluded from the order, and thus non-subject merchandise.

### B.  A Finding Of Likelihood Of Continuation Or Recurrence of Material Injury Requires A Condition Precedent Of Prior Material Injury

Because Çolakoğlu's AD margin was recalculated to zero on appeal, and Çolakoğlu was *retroactively* excluded from the dumping order back to the time of the original preliminary determination, Çolakoğlu's volume became nonsubject *ab initio* insofar as any consideration of injury is concerned.  The effect of Çolakoğlu's volume became non-subject merchandise is certain:  subject Turkish imports during the POI were negligible, thus non-injurious, and the investigation should have been terminated, just as it was in the CVD investigation.  *See* P.R.261/C.R.267, *Erdemir's Pre-hearing Br.* at 3-4.  In the CVD investigation, after Commerce found Çolakoğlu's imports not subsidized, the Commission excluded Çolakoğlu's unsubsidized imports as non-subject, found remaining Turkish subject imports were negligible, and terminated the CVD investigation.  *See HRS ITC Notice*, 81 Fed. Reg. 66,996; *HRS ITC Final*, USITC Pub. 4638, at 1 & n.2, 3, 12-14 ("We consequently determine that subsidized subject imports from Turkey are negligible and terminate the countervailing duty investigation on hot-rolled steel from Turkey.").  As Erdemir argued before the Commission, the negligibility decision in the AD

investigation, which has the identical factual record, cannot be different.  *See* P.R.323/C.R.292,

*Erdemir Post-hearing Br.* at 3-4.

If any country is found to have negligible imports, the Commission must terminate the

investigation, and may not cumulate negligible subject imports with subject imports from other

countries.  19 U.S.C. §§ 1673b(a) (preliminary-phase determination of negligibility),

1673d(b)(1)(B) (final-phase determination of negligibility); *SAA,* 1994 U.S.C.C.A.N. at 4189

(stating, sections 1673b(a) and 1673d(b)(1)(B) "require termination of the investigation if the

Commission determines that imports are negligible").[2]  When the provision requiring termination

of an investigation for negligibility was added in 1994, the *SAA* explained the change in the law

made termination of the investigation mandatory:  under sections 1673b(a) and 1673d(b)(1)(B)

"the Commission will not make material injury or threat determinations when it determines that

imports are negligible."  *SAA*, 1994 U.S.C.C.A. at 4189.  Further, the *SAA* explained that the

termination requirement for negligible imports "implements the requirement of the Agreements

that negligible or *de minimis* imports not be cumulated."  *SAA*, 1994 U.S.C.C.A.N. at 4183.

With the above legal framework and factual backdrop, the plain language of the statute

makes impossible a finding that revocation of the order as to negligible Turkish subject imports

could lead to a "continuation or recurrence" of material injury.  *See* 19 U.S.C § 1675(c)(1).  Both

"continuation" and "recurrence" require the prior existence of material injury.  The word,

"continuation," means, "the act or fact of continuing in or the prolongation of a state or activity."

*Continuation*, Merriam-Webster's Dictionary, https://www.merriam-

---

[2] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

webster.com/dictionary/continuation) (last visited July 12, 2023).  "Continuation" is from the word "continue," which means "to maintain without interruption a condition, course, or action,… to remain in existence: ENDURE,… to remain in a place or condition : STAY."  *Continue*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/continue) (last visited July 12, 2023).  The word "recurrence" means "a new occurrence of something that happened or appeared before : a repeated occurrence."  *Recurrence*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/recurrence (last visited July 12, 2023). Thus, the phrase "continuation or recurrence of material injury," 19 U.S.C. § 1675a(a)(1), requires, by definition, a condition precedent:  a pre-existing condition of material injury.  Thus, as a matter of law, the required condition precedent cannot exist for subject Turkish imports because "the Commission will not make material injury or threat determinations when it determines that imports are negligible."  *SAA*, 1994 U.S.C.C.A. at 4189.

The import of the dictionary definition is supported by the SAA's clarification that the question in a sunset review is whether conditions in the reasonably foreseeable future are likely to continue or recur to pre-order conditions:

> Under subparagraph (A), the Commission must consider its prior injury determination(s), including the volume, price effect, and impact of imports on the industry during the period preceding the issuance of an order or acceptance of a suspension agreement. This consideration is important, because this period is the most recent time during which imports of subject merchandise competed in the U.S. market free of the discipline of an order or agreement. If the Commission finds that pre-order or pre-agreement conditions are likely to recur, it is reasonable to conclude that there is likelihood of continuation or recurrence of injury.

*SAA*, 1994 U.S.C.C.A.N. at 4209.  Here, the pre-order condition (as clarified by the CIT's ruling in Çolakoğlu's appeal and implemented by the retroactive exclusion of Çolakoğlu from the

dumping order) was non-injurious: negligible imports. Thus, under the plain language of the statute, a "continuation or recurrence of material injury" cannot be found here.

### C. Retroactive Application Of Çolakoğlu's Exclusion Requires A Retroactive Change To The Investigation AD Negligibility Decision

The Commission must recognize, in the context of this sunset review, that Çolakoğlu's success on appeal has removed the required condition precedent. The circumstances before this Court's final decision (that Çolakoğlu was not dumping and should be excluded from the order) sustained the required condition precedent of a prior finding of material injury. But after this Court's decision in Çolakoğlu's appeal became final, that condition precedent could no longer exist. The Commission, however, specifically refused to consider arguments relating to the effect of Çolakoğlu's appeal:

> We note that in asserting that subject imports from Turkey would likely have no discernible adverse impact in the event of revocation, Erdemir has raised several arguments concerning the Commission's negligibility determination in the original antidumping duty investigation with respect to subject imports from Turkey. It contends that the Commission should revisit that determination either in these reviews, in a changed circumstance review, or in a reconsideration proceeding. Erdemir's Prehearing Brief at 10-18; Erdemir's Posthearing Brief at 1-6. These arguments have also been raised in proceedings outside of these reviews and the Commission has addressed them there. Five-year reviews are prospective in nature and therefore do not accommodate reconsideration of an original determination. *See generally* 19 U.S.C. § 1675(c)(1)(C).

P.R.355, *Sunset Publication*, at 48 n.298; C.R.336, *Views of the Commission* ("*Commission Views*"), at 68 n.298. The Commission's refusal to consider the effect of Çolakoğlu's appeal on the Commission's negligibility determination relating to Turkish subject imports in the AD investigation is an error requiring that this Court remand for reconsideration.

The retroactive exclusion of Çolakoğlu's imports from the AD investigation renders unlawful and unsupported by substantial evidence the Commission's finding that subject imports from Turkey were non-negligible in the antidumping duty investigation.  As in the injury determination of the CVD investigation, when Çolakoğlu's non-subject imports were excluded from subject Turkish imports, subject imports from Turkey in the AD investigation fall below negligible levels and were determined by the Commission not likely to imminently exceed negligible levels.

Put another way, the Commission could not make an affirmative finding of continuation or recurrence of material injury from subsidization of subject sunset POR imports from Turkey because subject POI imports were found negligible in the CVD investigation.  The failure of the same condition precedent now in the AD investigation compels the same failure of the condition subsequent in the AD sunset review.  The Commission cannot find that material injury is likely to continue or recur because of subject Turkish imports – which were negligible during the POI – did not previously cause material injury.

This Court's decision in Çolakoğlu's appeal of the AD investigation nullifies the Commission's decision in the AD investigation that subject imports from Turkey were non-negligible, could be cumulated with other subject imports, and caused material injury. Remaining subject imports from Turkey in the investigation were negligible, could not be cumulated, and the investigation should have been terminated.  Thus, the Commission, as a matter of law, could not reach a determination that subject imports from Turkey could be part of any continuation or recurrence of material injury.  Accordingly, this Court should remand with instructions for the Commission to reconsider its sunset review determination in light of

negligible POI imports from Turkey and a consequent required termination of the AD

investigation as to Turkey.

## II. The Commission's Decision Must Be Remanded Because The Commission Improperly Included Non-Subject Imports In Its Cumulation Analysis for Turkey

To the extent this Court does not require a negative sunset review determination on the

basis of the failed condition precedent, this Court should remand the Commission's final decision

in the sunset review for reconsideration insofar as investigation POI and sunset review POR data

must exclude Çolakoğlu's non-subject imports for all purposes – a step the Commission simply

failed to take.  In the sunset review, however, the Commission improperly included Çolakoğlu's

non-subject imports in its discussion of POI subject import volumes, volume effects, and price

effects in the investigation when these non-subject volumes should have been excluded.  Even

when the Commission separated subject from non-subject Turkish imports, its analysis was still

tainted by a bias induced by its having included non-subject Turkish imports in its baseline

analyses.  Further, the Commission's tainted analysis cannot be reconciled with its decision not

to cumulate subject imports from Brazil.

### A. The Commission's Cumulation Analysis Was Tainted By The Inclusion Of Significant Volumes Of Non-Subject Imports

The Commission's cumulation analysis improperly was tainted because the Commission

included Çolakoğlu's non-subject imports in its baseline analysis.  This tainted analysis voids

both the analysis of whether injury is likely to continue or recur and the analysis of whether to

cumulate subject imports from Turkey with other subject imports.  The Commission's

comparison of investigation data including Çolakoğlu's non-subject imports with sunset review

data excluding Çolakoğlu's non-subject imports created a mismatch of datasets and improper

comparison in the Commission's cumulation analysis.

The Commission's cumulation analysis cited the "attractiveness of the U.S. market and the Turkish industry's excess capacity," as reason to otherwise reject arguments that Turkish subject imports (excluding Çolakoğlu's non-subject imports) "will not have a discernible adverse impact." P.R.355, *Sunset Publication*, USITC Pub.5380, at 47-48; C.R.336, *Commission Views*, at 68. But the record does not support this claim. "The subject Turkish industry is not export-oriented," P.R.290 at 6, *Erdemir's Witness Testimony*, Ex.1 at 2, and hasn't been attracted to the U.S. market.

First, the Commission improperly included Çolakoğlu's non-subject imports in its review of subject imports during the POI. In the very first sentence of the Commission's cumulation analysis for Turkey included Çolakoğlu's non-subject imports in a review of subject import volume from Turkey in the investigation POI:

> In the original investigations, *subject imports from Turkey*
> increased from [      ] short tons in 2013 (or [      ] percent of
> apparent U.S. consumption) to [        ] short tons in 2014 (or
> [      ] percent of apparent U.S. consumption), and were
> [        ] short tons in 2015 (or [      ] percent of apparent U.S.
> consumption). They were lower in interim 2016 ([        ] short
> tons or [      ] percent of apparent U.S. consumption) than in
> interim 2015 ([        ] short tons or [      ] percent of
> apparent U.S. consumption).{}

P.R.355, *Sunset Publication*, USITC Pub.5380, at 45; C.R.336, *Commission Views*, at 64 (emphasis added). This recitation of POI subject import volumes in the sunset review is factually incorrect because it includes Çolakoğlu's non-subject imports. The Commission could not lawfully assert that the volumes of subject imports were, in fact, as stated above, knowing Çolakoğlu's imports were not dumped, and thus not subject imports. In a footnote two sentences later, the Commission specifically acknowledged that Çolakoğlu's AD margin was found to be zero on appeal, and claimed it did not include Çolakoğlu data "in the data for subject imports from Turkey during the current review." P.R.355, *Sunset Publication*, USITC Pub.5380, at 45

n.276; C.R.336, *Commission Views*, at 64 n.276.  Contrary to its claim, the Commission included Çolakoğlu's non-subject imports in the first sentence of the sunset review cumulation discussion for Turkey.  *Compare* P.R.355, *Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report*, at Summary Data Compiled From The Previous Proceeedings, at C-3 and C-5.

The Commission later flipped its analysis to include only Erdemir's exports to the United States during the POI, which were negligible at "[          ] short ton{s} in 2013 to [          ] short tons in 2014 and [          ] short tons in 2015."  P.R.355, *Sunset Publication*, USITC Pub.5380, at 47-48; C.R.336, *Commission Views*, at 68.  The Commission claimed this shows "Erdemir's exports to the United States [                    ],"  P.R.355, *Sunset Publication*, USITC Pub.5380, at 47; C.R.336, *Commission Views*, at 68, but that description misleadingly seems to focus on percentage changes, ignoring the [          ] volume on an absolute scale: Turkish subject POI imports were negligible.  *Compare* P.R.355, *Sunset Publication*, USITC Pub.5380/*Final Staff Report*, Summary Data Compiled From The Previous Proceeedings at C-3.

Second, the Commission cited underselling data from the investigation that the Commission conceded included Çolakoğlu's non-subject imports.  The Commission observed that "{i}n the original investigations, subject imports from Turkey undersold the domestic like product in 31 of 59 comparisons (52.3 percent), with [          ] short tons in the underselling comparisons ([          ] percent of the total volume of quarterly comparisons) and underselling margins ranging from [          ] to [          ] percent."  P.R.355, *Sunset Publication*, USITC Pub.5380, at 47; C.R.336, *Commission Views*, at 67.  But the Commission conceded that "{m}ost of these {POI} comparisons were likely from nonsubject producer Colakoglu."  P.R.355, *Sunset Publication*, USITC Pub.5380, at 47 n.292; C.R.336, *Commission Views*, at 67

n.292.  Any analysis including Çolakoğlu's non-subject imports is in error and cannot provide record support for the Commission's findings or conclusions.

The Commission then compared the POI underselling analysis including Çolakoğlu's non-subject imports with the very different POI underselling analysis which paints a very different picture of subject Turkish imports:  "Turkey undersold the domestic like product in 1 of 4 comparisons (25.0 percent), with [          ] short tons in the underselling comparison ([          ] percent of the total volume of quarterly comparisons) and an underselling margin of [          ] percent."  P.R.355, *Sunset Publication*, USITC Pub.5380, at 47; C.R.336, *Commission Views*, at 67.  The single instance of underselling during the POR, [          ] short tons, represents a [                              ] of approximately [                                        ] of total U.S. consumption, and [                                        ] of total subject imports, in the year of that sale.  *Compare* P.R.355, *Sunset Publication*, USITC Pub.5380/*Final Staff Report*, at V-13, Table V-3, *with id.*, at C-3 to C-5.  Reviewing these numbers as overselling, instead of underselling, the POR data paints a true picture of subject imports from Turkey during the POR:  "Turkey {oversold} the domestic like product in {3} of 4 comparisons ({75.0} percent), with [          ] short tons in the {overselling} comparison ([          ] percent of the total volume of quarterly comparisons) and an {overselling} margin of [          ] percent."  *Compare* P.R.355, *Sunset Publication*, USITC Pub.5380, at 47; C.R.336, *Commission Views*, at 67, *with* P.R.355, *Sunset Publication*, USITC Pub.5380/*Final Staff Report* at V-9 & Table V-15; *see* P.R.261/C.R.267, *Erdemir's Pre-hearing Br.* at 20-21.  The concession by the Commission that POI underselling was mostly by Çolakoğlu's non-subject imports, combined with the significant POI overselling by subject Turkish imports, undercuts any support the Commission

intended to draw from **[            ]** underselling.  P.R.323/C.R.292, *Erdemir Post-hearing Br.*,

*Answers to Comm'n Questions*, at 20-22; P.R.342/C.R.326, *Erdemir Final Cmts.*, at 2-4.

### B.  Other Aspects Of The Commission's Cumulation Analysis Were Tainted By The Commission's Bias

Other aspects of the Commission's cumulation analysis appear tainted by the

Commission's apparent bias derived from including Çolakoğlu's non-subject imports with its

baseline analysis.  For example, the Commission cited partial statements on the record **[**

**]**, ignoring the ameliorating effects of the complete statements.  The Commission cited

a record statement that "**[            ]** acknowledges that the United States is a higher-priced

market," and that **[**

**]**.  P.R.355, *Sunset Publication*, USITC Pub.5380, at 47 &

n.296; C.R.336, *Commission Views*, at 68 & n.296.  But the Commission ignored the explanation

that, despite the alleged attractiveness of the U.S. market, **[**

**]**.  **[                ]** Foreign Producer's Questionnaire Response at

25.  Indeed, the data bear out the explanation:  **[**

**]**.  **[                ]** Foreign Producer's Questionnaire Response

at 15.  Thus, even without the order in place, and despite the higher priced U.S. market and

available excess capacity, subject Turkish producers explained that they are domestic-market

oriented, and third-country-market oriented:  **[**

**]**, **[                ]** Foreign Producer Questionnaire

Response at 14, **[            ]** Investigation Foreign Producer Questionnaire Response at

15, and **[**

]. [                    ] Foreign Producer Questionnaire Response at

14; *Erdemir's Pre-hearing Br.*, at 19-24.

Even when prices in the United States increased significantly due to domestic supply and

demand imbalances, and non-subject Turkish imports – Çolakoğlu's fairly-traded imports –

increased [                ] from [        ] short tons in 2020, to [                ] short tons in 2021,

subject Turkish imports remained an exceptionally [                                ]. *See* P.R.355,

*Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report* at Table IV-1, page IV-3 to

IV-4.  Even in that high-price, high-demand environment, subject Turkish producers did not seek

customers in the U.S. market, they merely responded to sales inquiries.  *See* P.R.290 at 6,

*Erdemir's Witness Testimony*, Ex.1 at 2 ("Erdemir participates very little in the U.S. market, only

responding to demand with occasional spot sales. We believe this condition is the same for all

subject Turkish exporters.  Erdemir's primary focus is the strong demand in its domestic

market."); [                        ] Investigation Foreign Producer Questionnaire Response at 16

[

                                        ]; [                ] Foreign

Producer Supplemental Questionnaire Response, at 1-2 [

                                                        ]; [

        ] Foreign Producer Questionnaire Response at 14 [

                        ]; P.R.261/C.R.267, *Erdemir Pre-hearing Br*. at 22.  Subject

Turkish producers contrast with non-subject producer, Çolakoğlu, who sells from inventory in

the United States.  *See* P.R.323/C.R.292, *Erdemir Post-Hearing Br.*, at 12 and Ex.4.  The

*Public Version*

Commission's conclusion ignores the complete statements on the record and the circumstances of Turkish negligible imports during the POI.

Another example of the Commission's bias is the Commission reliance on its claim that "Turkey also faces an antidumping duty order in the European Union, which may foreclose an important export market for the subject industry."  P.R.355, *Sunset Publication*, USITC Pub.5380, at 48; C.R.336, *Commission Views*, at 68.  The Commission ignored the explanation that the EU market was opening because of a successful challenge to the EU's trade measures against Turkey and the withdrawal of other suppliers to the EU market, and that the Turkish domestic market was opening more to Turkish domestic producers because of trade measures against imports into Turkey.  *See* [                                        ] Foreign Producer Questionnaire Response at 24 [



                                                                                                    ].

Record evidence bears out the statements of Turkish subject suppliers.  For subject producers [

            ] home-market plus export shipments to markets other than the United States in 2021 averaged more than [        ] percent of their HRS production.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report.*, at IV-161 to -162, Table IV-60 (listing exports to the United States as [            ] percent and [            ] percent of subject producers total HRS production); at IV-164 to -169, Tables IV-61 and IV-62 (listing total production, total exports, and total exports to the United States); at C-3 and C-5 (Tables C-1 and C-2).  The importance of the U.S. market for Çolakoğlu's non-subject imports from Turkey has not changed since the investigation; neither has the unimportance of the U.S. market changed for subject imports from

Turkey.  *Compare* P.R.355, *Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report.*, at C-3 and C-5 (Tables C-1 and C-2), *with id.*, at Summary Data Compiled From The Previous Proceedings, at C-3 and C-5 (Tables C-1 and C-2).  The Commission's erroneous inclusion of Çolakoğlu's non-subject imports in aspects of its cumulation analysis distorts the analysis of subject Turkish imports and fatally introduces bias into the Commission's analysis.

### C.  The Commission's Tainted Analysis Cannot Be Reconciled With Its Decision Not To Cumulate Imports From Brazil

The Commission's failure to exclude Çolakoğlu's non-subject imports from its baseline analysis of investigation data tainted the cumulation analysis such that it cannot be reconciled with the Commission's decision not to cumulate subject imports from Brazil.  While the Commission declined to cumulate subject Brazilian imports on the basis of different conditions of competition rather than no discernible adverse impact, the Commission failed to acknowledge that circumstances of subject Turkish imports are as compelling as the circumstance of Brazilian subject imports and that these two theories for cumulation have overlapping analyses.  Indeed, some of Erdemir's arguments under the no-discernible-adverse-impact umbrella (e.g., historical home-market and third-country-market orientation, percent of production dedicated to home and third-country markets, capacity utilization, timing of subject imports reentering and reexiting the U.S. market, different business model from non-subject Turkish imports, etc.), P.R.261/C.R.267, *Erdemir Pre-hearing Br.*, at 18-24; P.R.323/C.R.292, *Erdemir Post-hearing Br.*, at 5-15 and *Answers to Comm'n Questions* at 20-22; P.R.342/C.R.326, *Erdemir Final Cmts.*, at 2-4, are arguments generally seen as conditions-of-competition arguments.[3]  Further, while the statutory

---

[3] *Purified Carboxymethylcellulose from Finland, Mexico, Netherlands, and Sweden*, Inv. 731-TA-1085, 1087 (May 2011), USITC Pub. No. 4225, at 17-20 (not cumulating on the basis of different conditions of competition, including home-market and/or third-country-market orientation); *Hot-Rolled Flat-Rolled Carbon-Quality Steel Products from Brazil, Japan, and*

language specifically precludes cumulation where there likely is no discernible adverse impact, the Commission's decisions not to cumulated on the basis of different conditions-of-competition is a creature of Commission discretion, not statutory construction.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 19 n.86, 56-60 n.375; C.R.336, *Commission Views*, at 24 n.86 (*citing* 19 U.S.C. § 1677(7)(G)(i); *Nucor Corp. v. United States*, 601 F.3d 1291, 1293 (Fed. Cir. 2010); *Allegheny Ludlum Corp. v. United States*, 475 F. Supp. 2d 1370, 1378 (Ct. Int'l Trade 2006), and at 86 n.375 (citing cases).

The Commission's cumulation analysis for Brazil addressed arguments about no discernible adverse impact and conditions of competition.  Regarding no discernible adverse impact, the Commission pointed to the increase in Brazilian subject imports during the original investigation, production volume, and current excess capacity, to "find that revocation of the antidumping and countervailing duty orders on subject imports from Brazil would not likely have no discernible adverse impact on the domestic industry." *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 31-33; C.R.336, *Commission Views*, at 41-44.  A unique factor related to Brazil, however, was the "annual absolute import quota of 143,416 short tons under Section 232" that Brazil had negotiated with the United States.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 32-33; C.R.336, *Commission Views*, at 44.  In making a negative finding about no discernible adverse impact, the Commission emphasized that "the Section 232 quota (143,416 short tons) is equivalent to approximately 0.25 percent of apparent U.S. consumption in 2021," and "might otherwise be available to the domestic industry."  *Id*.

---

*Russia*, Inv. 701-TA-384 and 731-TA-806-807 (Second Review) (June 2011), USITC Pub. No. 4237, at 16-18 (same); *Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, China, and the United Arab Emirates*, 731-TA-1131 (January 2015), USITC Pub. No. 4512, at 18-22 (same)

But the Commission decided not to cumulate Brazilian subject imports with other subject imports almost entirely on the basis of Brazil's annual absolute import quota of 143,416 short tons under Section 232.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 62; C.R.336, *Commission Views*, at 90 ("in light of the foregoing, in particular the absolute annual quota, we find that subject imports from Brazil would likely compete under different conditions of competition").  The Commission found that the absolute import quota was different because other subject countries because, with one exception, they either were not subject to Section 232 duties (Australia), had no quotas but were subject to the 25 percent ad valorem Section 232 duties (Turkey and Russia), or quotas that did not have an absolute cap – meaning, after a certain volume free of Section 232 duties, there was no limitation on the volume of imports subject to Section 232 duties (Japan, Netherlands, and UK).  *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 60-62; C.R.336, *Commission Views*, at 87-88.  Finally, the one exception is South Korea, which also has an absolute quota, but its quota is 4 times higher, at 584,544 short tons per year.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 61; C.R.336, *Commission Views*, at 87-88.  Thus, the Commission speculated that all other countries could compete for larger sales, while Brazil would be stuck with a maximum of 143,416 short tons.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 61-62; C.R.336, *Commission Views*, at 89.  The Commission's analysis, however, is again tainted by its failure to exclude Çolakoğlu's non-subject imports. The Commission's analysis has more than a merely speculative basis to believe that all other subject countries except Turkey might compete for larger share of the U.S. market.  Each of those other subject countries during the POI of the original investigation, had significant imports of subject merchandise.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report*, Summary Data Compiled From The Previous Proceeedings, at C-5, Table C-2.  But

without Çolakoğlu's non-subject imports, subject Turkish exports have never shown any inclination to seek a larger share of the U.S. market than subject imports from Brazil could under the absolute tariff quota.  Subject Turkish imports have never reached even **[     ]** of Brazil's absolute quota.

Evaluated separately – not cumulated with other subject countries – the analysis of whether revocation of the AD and CVD duty orders on Brazil were likely to lead to a continuation or recurrence of material injury looked the domestic-market orientation, declining exports, increasing capacity utilization, and domestic AUVs relative to export AUVs.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380, at 100-107; C.R.336, *Commission Views¸* at 145-155 (citing P.R.355, *Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report*, at IV-58, Table IV-20).  The story is nearly identical with Turkey.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report*, at IV-156 to IV-157, Table IV-59, Appx.C.  But the story with Turkey is  a little different:  when excluding Çolakoğlu's fairly-traded imports, subject imports from Turkey during the POI were negligible.  Further, while subject POR imports from Brazil were **[          ]** than subject POR imports from Turkey, subject POR imports from Turkey were otherwise among the **[     ]** among imports from all other subject countries, and significantly **[     ]** than other subject countries, Japan, Netherlands, and South Korea.  *See* P.R.355, *Sunset Publication*, USITC Pub.5380/C.R.306, *Final Staff Report* at IV-3 to IV-4.

The Commission's division of the cumulation analysis between "no discernible adverse impact" and "conditions of competition" is effectively meaningless given the similarity of analysis between the two.  The Commission first found that Brazil's imports "would not likely have no discernible adverse impact on the domestic industry," because the absolute tariff quota

represented a potential loss by the domestic industry of 143,416 short tons.  P.R.355, *Sunset Publication*, USITC Pub.5380, at 32; C.R.336, *Commission Views*, at 44.  But then the Commission found that the because of the 143,416 short ton absolute quota, "the likely volume of subject imports from Brazil, in absolute terms and relative to U.S. consumption, would not be significant in the event of revocation."  P.R.355, *Sunset Publication*, USITC Pub.5380, at 32-33; C.R.336, *Commission Views*, at 151.  The data surrounding these two contradictory findings is the same; there is no functional difference.

The arguments raised by Erdemir about Turkish subject imports relied upon very similar data, with one notable exception:  subject imports from Turkey were negligible at all times of the POI and POR, not just during the POR, as with Brazil.  The internal conflict in the Commission's decisions regarding Brazil undermines any distinction the Commission can claim between Brazil and Turkey.  This Court should remand this case to the Commission to explain why it treated Brazil differently than Turkey given the negligible volume of Turkey's subject imports in the investigation and otherwise nearly identical data and information for the POI and POR.

## CONCLUSION

Imports from Çolakoğlu were found to be unsubsidized in the investigation and fairly priced on remand after appeal.  Thus, Çolakoğlu's volume should have been excluded for all purposes in the sunset review.  Without Çolakoğlu's non-subject imports, there was no condition precedent to support a sunset review determination that revocation of the AD order on Turkey would likely lead to continuation or recurrence of material injury.  Further, the Commission improperly include Çolakoğlu's non-subject imports in its cumulation analysis of whether to cumulate subject Turkish imports with subject imports from other subject countries.  By improperly including Çolakoğlu's non-subject imports in its analysis, the Commission unlawfully considered non-subject imports its analysis, and reached a decision that is neither supported by substantial record evidence nor in accordance with law.  For these reasons, Erdemir respectfully requests that this Court remand with instructions for the Commission to reconsider its sunset review determination in light of the failure of the required condition precedent, given subject imports during the investigation were negligible, and to reconsider its cumulation decision after excluding Çolakoğlu's non-subject imports for all purposes in POI and POR data.

Respectfully submitted,

/s/ *Mark B. Lehnardt*

David L. Simon
Mark B. Lehnardt

Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036

Email: MarkLehnardt@DLSimon.com

July 14, 2023

*Counsel to Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

CONFIDENTIAL VERSION

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The confidential version of this brief contains **10,549** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

<u>/s/ Mark B. Lehnardt</u>
Mark B. Lehnardt

Date: July 14, 2023

*Counsel to Ereğli Demir ve Çelik*
*Fabrikalari T.A.Ş.*