Slip Op. 24-75

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>    **Defendant,**<br><br>**and**<br><br>**UNITED STATES STEEL CORPORATION, CLEVELAND CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES, LLC, and NUCOR CORPORATION,**<br><br>    **Defendant-Intervenors.** | **Before: Gary S. Katzmann, Judge**<br>**Court No. 22-00351** |

## <u>OPINION</u>

[ The court denies Plaintiff's Motion for Judgment on the Agency Record. ]

Dated: <u>June 20, 2024</u>

<u>David L. Simon</u>, Law Office of David L. Simon, PLLC, of Washington, D.C., argued for Plaintiff Ereğli Demir ve Çelik Fabrikalari T.A.Ş.  With him on the brief was <u>Mark B. Lehnardt</u>.

<u>Spencer J. Toubia</u>, Attorney-Advisor, U.S. International Trade Commission, of Washington, D.C., argued for Defendant the United States International Trade Commission.  With him on the brief were <u>Dominic L. Bianchi</u>, General Counsel, and <u>Andrea C. Casson</u>, Assistant General Counsel for Litigation.

<u>Jeffrey D. Gerrish</u>, Schagrin Associates, of Washington, D.C., argued for Defendant-Intervenors United States Steel Corporation, Cleveland-Cliffs Inc., Steel Dynamics, Inc., SSAB Enterprises, LLC, and Nucor Corporation.  With him on the brief were <u>Roger B. Schagrin</u> and <u>Nicholas Phillips</u>.

Thomas M. Beline and Sarah E. Shulman, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor United States Steel Corporation.

Alan H. Price, Christopher B. Weld, and Theodore P. Brackemyre, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Nucor Corporation.

Stephen P. Vaughn, Neal Reynolds, and Barbara Medrado, King & Spalding LLP, of Washington, D.C., for Defendant-Intervenor Cleveland-Cliffs Inc.

Katzmann, Judge: This case requires the court to peer into a kaleidoscope of administrative determinations related to the issuance of antidumping and countervailing duty orders on imports of hot-rolled steel from Turkey.

In 2016, the U.S. Department of Commerce ("Commerce") determined that hot-rolled steel flat products imported from Turkey were being sold in the United States at less than fair value. See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Determination of Sales at Less Than Fair Value, 81 Fed. Reg. 53428 (Dep't Com. Aug. 12, 2016) ("Original Antidumping Determination"). The U.S. International Trade Commission ("Commission"), after conducting its own investigation, determined that these less-than-fair-value ("dumped") import sales inflicted material injury on a U.S. industry. Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom, 81 Fed. Reg. 66996 (ITC Sept. 29, 2016) ("Original Determination"). Commerce then issued an antidumping duty order. See Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders, 81 Fed. Reg. 67962 (Dep't Com. Oct. 3, 2016) ("Antidumping Duty Order").

Three and a half years later, Commerce determined that one (but not all) of the Turkish importers of hot-rolled steel that the Commission had investigated was not in fact dumping merchandise. See Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part, 85 Fed. Reg. 29399 (Dep't Com. May 15, 2020) ("Amended Antidumping Determination"). The Commission then revisited its original material-injury determination in a five-year "sunset" review. See Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom, 87 Fed. Reg. 74167 (ITC Dec. 2, 2022), P.R. 357 ("Five-Year Determination"). The Commission determined that revoking the antidumping order was likely to lead to continuation or recurrence of dumping and material injury. See id.; see also 19 U.S.C. § 1675(c)(1).

In this case, Plaintiff Eregli Demir ve Celik Fabrikalarti T.A.S. ("Erdemir"),[1] a Turkish producer of hot-rolled steel, argues in a Motion for Judgment on the Agency Record that the Commission's Five-Year Determination unlawfully fails to take proper account of Commerce's Amended Antidumping Determination. See Compl., Dec. 26, 2022, ECF. No. 4.

---

[1] To ensure internal consistency and to reduce the risk of transcription errors in electronic publication formats, the court in this opinion (apart from this demonstrative footnote) represents Turkish proper names without diacritics. See Assan Aluminyum Sanayi ve Ticaret v. United States, 48 CIT __, __ n.1, Slip Op. 24-44, at 2 n.1 (Apr. 11, 2024). Thus, for example, Ereğli Demir ve Çelik Fabrikaları T.A.Ş." becomes "Eregli Demir ve Celik Fabrikarti T.A.S." and "Çolakoğlu Dis Ticaret A.Ş." becomes "Colakoglu Dis Ticaret A.S."

The court concludes that the challenged elements of the <u>Five-Year Determination</u> are supported by substantial evidence and in accordance with law. The court accordingly enters Judgment on the Agency Record for Defendant (the Commission) and Defendant-Intervenors.

## BACKGROUND

### I.    *Legal and Regulatory Framework*

#### A.    *Antidumping and Countervailing Duties*

The Tariff Act of 1930, as amended, requires Commerce to order the imposition of countervailing duties on imported merchandise upon finding that "the government of a country or any public entity within the territory of a country is providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of" that merchandise. 19 U.S.C. § 1671(a)(1); <u>see also</u> <u>id.</u> § 1671e. Commerce is also required to order the imposition of antidumping duties on imported merchandise that "is being, or is likely to be, sold in the United States at less than its fair value." <u>Id.</u> § 1673(1); <u>see also</u> <u>id.</u> § 1673e. The amount of an antidumping duty that Commerce assesses is based on Commerce's calculation of a "dumping margin," which is "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." <u>Id.</u> § 1677(35)(A).

Commerce cannot impose either type of duty, however, unless the Commission separately determines (as relevant here) that "an industry in the United States (i) is materially injured, or (ii) is threatened with material injury . . . by reason of imports of that merchandise or by reason of sales (or the likelihood of sales) of [the subject] merchandise for importation." <u>Id.</u> §§ 1671(a)(2), 1673(2).

### B.        The Commission's Five-Year Review

Every five years after the publication of an antidumping or countervailing duty order, the Commission is required to conduct a "sunset" review of that order.  Id. § 1675(c)(1); Nucor Corp. v. United States, 32 CIT 1380, 1385, 594 F. Supp. 2d 1320, 1333 (2008), aff'd, 601 F.3d 1291 (Fed. Cir. 2010).  The Commission's task in conducting this review is to determine whether "revocation of [the] order . . . would be likely to lead to a continuation or recurrence of material injury within a reasonably foreseeable time."  19 U.S.C. § 1675a(a)(1).  In doing so, the Commission is to consider the "likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked or the suspended investigation is terminated."  Id.  If the Commission determines that revocation would likely lead to continued or recurrent material injury, Commerce cannot revoke the order.  Id. § 1675(d)(2)(B).  But if the Commission concludes that revocation would not have this effect, Commerce must revoke the subject order if Commerce does not separately determine "that dumping or a countervailable subsidy, as the case may be, would be likely to continue or recur . . . ."  Id. § 1675(d)(2)(A).  The Commission's material-injury analysis is thus a critical determinant of whether an antidumping or countervailing duty order will remain in effect after the five-year sunset review.

### C.        Cumulation in the Five-Year Review Context

In conducting its likely-material-injury analysis, the Commission "may cumulatively assess the volume and effect of imports" from multiple source countries if those imports satisfy certain threshold criteria.  19 U.S.C. § 1675a(a)(7).  The imports must be (1) "likely to compete with each other and with domestic like products in the United States market" and (2) not be "likely to have no discernible adverse impact on the domestic industry."  Id.  If these criteria are satisfied,

the Commission "may cumulatively assess the volume and effect of imports of the subject

merchandise from all countries" subject to review.  Id.  But as the word "may" indicates, the

Commission retains discretion not to make a cumulative assessment (that is, "cumulate") even

where the statutory criteria are satisfied.  Id. § 1675a(a)(7); Nucor, 601 F.3d at 1293.  If the

Commission declines to cumulate imports from a source country, it proceeds to a likely-material-

injury analysis for the decumulated imports on an independent, country-specific basis.  See

19 U.S.C. § 1675a(a)(2).

Section 1675a does not delineate any factors that the Commission must consider in

determining whether to cumulate imports from a given country.  See Nucor, 601 F.3d at 1295;

Neenah Foundry Co. v. United States, 25 CIT 702, 709, 155 F. Supp. 2d 766, 772 (2001).  The

Commission accordingly enjoys "wide latitude" in identifying relevant factors for cumulation in

sunset reviews.  Allegheny Ludlum Corp. v. United States, 30 CIT 1995, 2002, 475 F. Supp. 2d

1370, 1380 (2006).  At the same time, however, the Commission's discretion must "be predicated

upon a judgment anchored in the language and spirit of the relevant statutes and regulations."

Freeport Mins. Co. v. United States, 766 F.2d 1029, 1032 (Fed. Cir. 1985).

### D.      *De Minimis Margins and Negligibility*

When calculating an antidumping duty, Commerce "shall disregard any weighted average

dumping margin that is de minimis . . ." 19 U.S.C. § 1673d(a)(4).  "[A] weighted average dumping

margin is de minimis if it is less than 2 percent ad valorem or the equivalent specific rate for the

subject merchandise."  Id. § 1673b(b)(3).  As Commerce can apply different weighted average

dumping margins to different respondents in an investigation, id. § 1677(35)(B), a de minimis

finding for one respondent does not necessarily compel the termination of an antidumping order

with respect to all respondents.

When calculating a countervailing duty, Commerce is to disregard as <u>de minimis</u> any countervailable subsidy where "the aggregate of the net countervailable subsidies is less than 1 percent ad valorem or the equivalent specific rate for the subject merchandise." <u>Id.</u> § 1671b(b)(4)(A); <u>see also</u> <u>id.</u> § 1671d(a)(3).

As these provisions indicate, Commerce's calculation of a <u>de minimis</u> margin for dumping or a countervailable subsidy reflects a low degree of dumping or subsidization. The Commission's negligibility analysis, by contrast, involves a straightforward comparison of the volume of dumped or subsidized imports from a country against the volume of all imports of the same merchandise from all countries. "[I]mports from a country of merchandise corresponding to a domestic like product identified by the Commission are 'negligible' if such imports account for less than 3 percent of the volume of all such merchandise imported into the United States . . . ." <u>Id.</u> § 1677(24)(A)(i). In an original (non-sunset) material injury investigation, the Commission is directed to terminate the investigation upon determining negligibility. <u>Id.</u> § 1671d(b)(1)(B). The five-year review provision, however, does not expressly provide such a requirement. <u>See</u> <u>id.</u> § 1675a.

## II.    *History of Relevant Administrative Proceedings*

In September 2016, the Commission determined that the U.S. hot-rolled steel industry was materially injured or threatened with material injury by less-than-fair-value (that is, "dumped") imports of hot-rolled steel from Turkey. <u>See</u> Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), USITC Pub. 4638, (Sep. 2016) ("<u>Original Determination</u> Views"); <u>see also</u> <u>Original Determination</u>.

At the same time, the Commission terminated its investigation of material injury by Turkish imports of hot-rolled steel that received countervailable subsidies.  See Original Determination Views at 14.  The Commission explained that Commerce had earlier determined that Turkish hot-rolled steel producer Colakoglu Metalurji A.S. and its affiliates (collectively, "Colakoglu") received a de minimis countervailable subsidy margin.  Id. at 13 (citing Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination, 81 Fed. Reg. 53433 (Dep't Com. Aug. 12, 2016)). This meant that for the remaining Turkish producers subject to Commerce's countervailing duty order, including Erdemir, "there is not a potential that subsidized subject imports from Turkey will imminently exceed three percent [that is, the non-negligibility threshold provided by 19 U.S.C. § 1677(24)(A)(i)] of total imports." Id. at 14.  But because Colakoglu at the time remained subject to Commerce's Antidumping Order, the Commission did not make a similar negligibility finding with respect to dumped imports of hot-rolled steel from Turkey.  See id. at 13 & n.52.

Pursuant to the Original Determination, as well as the results of its own investigation, see Original Antidumping Determination, Commerce issued an antidumping duty order on Turkish imports of hot-rolled steel in October 2016.  See Antidumping Duty Order.  Commerce calculated dumping margins above the de minimis level for both Erdemir and Colakoglu.  Original Antidumping Determination at 53429.

Later in October 2016, Erdemir and Colakoglu challenged the Original Antidumping Determination in consolidated actions before this court.  See Eregli Demir ve Celik Fabrikalari T.A.S. v. United States, 44 CIT __, __, 435 F. Supp. 3d 1378, 1379 (2020).  And after three

remands in that case, <u>see</u> <u>id.</u>, Commerce amended the <u>Antidumping Duty Order</u>.  See <u>Amended</u> <u>Antidumping Determination</u>.

In the <u>Amended Antidumping Determination</u>, Commerce calculated Colakoglu's dumping margin as zero and excluded Colakoglu's imports from the antidumping duty order.  See <u>Amended</u> <u>Antidumping Determination</u> at 29400.  But Commerce clarified that "[t]his exclusion does not apply to merchandise that is not both produced and exported by Colakoglu."  <u>Id</u>. Commerce calculated an above <u>de minimis</u> dumping margin of 2.73% for Erdemir and accordingly left the antidumping order in place with respect to Erdemir's imports of dumped merchandise.  <u>See</u> <u>id.</u>; <u>see also</u> 19 U.S.C. § 1673b(b)(3).

On May 18, 2020, Erdemir requested that the Commission reconsider its <u>Original</u> <u>Determination</u> on account of Commerce's exclusion of Colakoglu from the antidumping order in the <u>Amended Antidumping Determination</u>.  <u>See</u> Letter from Erdemir to ITC, re: Request for Reconsideration (May 18, 2020), P.R. 1 ("Reconsideration Request").

One year later, following, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") dismissed an appeal from this court's decision sustaining Commerce's <u>Amended</u> <u>Antidumping Determination</u>.  See <u>Eregli Demir ve Celik Fabrikalari T.A.S. v. United States</u>, No. 20-2003 (Fed. Cir. dismissed June 4, 2021), P.R. 18; <u>see also</u> <u>Eregli Demir</u>, 435 F. Supp. 3d 1378. Erdemir then requested that the Commission initiate a Changed Circumstances Review of its <u>Original Determination</u> on account of the finality of the <u>Amended Antidumping Determination</u>. <u>See</u> Letter from Erdemir to ITC, re: Changed Circumstances Review Request (Sept. 10, 2021), P.R. 18 ("CCR Request").  The Commission denied both the Reconsideration Request and the CCR Request on November 29, 2022.  <u>See</u> <u>Denial of Request To Institute a Section 751(b) Review;</u>

Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products From Turkey, 87 Fed. Reg. 73331 (ITC Nov. 29, 2022), P.R. 356.

Meanwhile, the Commission conducted a five-year sunset review of the Original Determination. Erdemir submitted a pre-hearing administrative brief on September 8, 2022. See Pre-Hearing Br., Sept. 8, 2022, P.R. 261, C.R. 267. The Commission held a public hearing on September 15, 2022, see Hr'g Tr., Sept. 16, 2022, P.R. 307, and Erdemir submitted a post-hearing administrative brief shortly afterward. See Post-Hr'g Br., Sept. 27, 2022, P.R. 323, C.R. 292 ("Erdemir's Post-Hr'g Br.").

The Commission published the results of its sunset review in the Federal Register on December 2, 2022. See Five-Year Determination. The Commission determined that revoking the antidumping duty order on Turkish imports of hot-rolled steel "would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time." Id. at 74167.

The Commission explained its reasoning at greater length in a separate Commission-issued publication. See Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom, USITC Pub. No. 5380, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review) (Nov. 2022), P.R. 355 ("Public

Views"), C.R. 336 ("Confidential Views").[2]  The Commission explained that in reaching[3] its

determination, it cumulatively assessed ("cumulated") less-than-fair-value imports of subject

merchandise from Turkey with those from Australia, Japan, the Netherlands, South Korea, Russia,

and the United Kingdom (but not Brazil, the remaining subject country).  See Public Views at 67;

Confidential Views at 96–97.

### III.    Procedural History

Erdemir filed a complaint against the Commission before the U.S. Court of International

Trade ("CIT") on December 26, 2022.  See Compl.  Five U.S. producers of hot-rolled steel (United

States Steel Corporation, Cleveland-Cliffs Inc., Steel Dynamics, Inc., SSAB Enterprises, LLC, and

Nucor Corporation) then moved to intervene as Defendant-Intervenors.  See Mot. to Intervene,

Jan. 12, 2023, ECF No. 19; Mot. to Intervene., Jan. 24, 2023, ECF No. 21; Mot to Intervene, Jan.

24, 2023, ECF No. 26; Mot. to Intervene, Jan. 25, 2023, ECF No. 31.  The court granted each

motion.  See Order, Jan. 12, 2023, ECF No. 20; Order, Jan. 24, 2023, ECF No. 25; Order, Jan. 25,

2023, ECF No. 30; Order, Jan. 26, 2023, ECF No. 35.

---

[2] The Commission published both public and confidential versions of this document.  As these versions are paginated differently, citations in this opinion refer to both versions.

[3] "The Commission makes its determinations by tallying the votes of the six individual commissioners, each of whom is obligated to determine whether particular imports cause or threaten to cause the requisite harm."  U.S. Steel Grp. v. United States, 96 F.3d 1352, 1360 (Fed. Cir. 1996).  Only five commissioners took part in issuing the Five-Year Determination: David S. Johanson, Rhonda K. Schmidtlein, Jason E. Kearns, Randolph J. Stayin, and Amy A. Karpel.  While Commissioners Schmidtlein and Stayin dissented as to the majority's decision not to cumulatively assess Brazilian imports of hot-rolled steel, the commissioners were unanimous as to the aspects of the Five-Year Determination that are subject to challenge in this case.  See Public Views at 108; Confidential Views at 156.

On July 14, 2023, Erdemir filed the instant Motion for Judgment on the Agency Record under USCIT Rule 56.2.  See Pl.'s Mot. for J. on the Agency R., July 14, 2023, ECF No. 45 ("Pl.'s Br.").  After filing a motion for an extension of time, see Def.'s Mot. for Extension of Time, Sept. 20, 2023, ECF No. 48, which was granted, see Order, Sept. 20, 2023, ECF No. 49, the Government filed a response.  See Def.'s Mem. in Opp'n. to Pl.' Mot. for J. on the Agency R., Nov. 16, 2023, ECF No. 52.  Defendant-Intervenors also filed a response, see Resp. of Def.-Inters. in Opp'n to Pl.'s Mot. for J. on the Agency R., Nov. 16, 2023, ECF No. 54, and Erdemir filed a reply.  See Pl.'s Reply, Dec. 21, 2023, ECF No. 57 ("Pl.'s Reply").  After the court scheduled oral argument for April 10, 2024, see Order, Mar. 1, 2024, ECF No. 62, Erdemir moved to bifurcate that argument into public and closed sessions.  See Pl.'s Mot. to Bifurcate Oral Arg., March 9, 2024, ECF No 63.  The court denied that motion, see Order, Apr. 2, 2024, ECF No. 64, and issued a list of questions to the parties on to the parties later that day.  See Letter re: Qs. for Oral Arg., Apr. 2, 2024, ECF No. 65.  The parties timely filed written responses to those questions.  See Pl.'s Resp. to Ct.'s Qs. for Oral Arg., Apr. 8, 2024, ECF No. 66; Def.'s Resp. to Ct.'s Qs. for Oral Arg., Apr. 8, 2024, ECF No. 67; Def.-Inters.' Resp. to Ct.'s Qs. for Oral Arg., Apr. 8, 2024, ECF No. 68.

At oral argument, which was held as a single public session, the court invited the parties to file additional written submissions.  The parties did so.  See Pl.'s Post-Oral Arg. Subm., April 22, 2024 ("Pl.'s Supp. Br."), ECF No. 73; Def.-Inters.' Post-Oral Arg. Subm., Apr. 22, 2024, ECF No. 74; Def.'s Post-Oral Arg. Subm., Apr. 22, 2024, ECF No. 75.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction lies under 28 U.S.C. § 1581(c).  The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i), which states that "[t]he court shall hold unlawful any

determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ."

"[A] party challenging the Commission's determination under the substantial evidence standard has chosen a course with a high barrier to reversal." Nippon Steel Corp. v. United States, 458 F.3d 1345, 1358 (Fed. Cir. 2006) (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Broadcom Corp. v. Int'l Trade Comm'n, 28 F.4th 240, 249 (Fed. Cir. 2022) (internal quotation marks and citation omitted). To be supported by substantial evidence, a determination must account for "whatever in the record fairly detracts from its weight," including "contradictory evidence or evidence from which conflicting inferences could be drawn." Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487–88 (1951)).

## DISCUSSION

Erdemir presents two main arguments: that (1) the Five-Year Determination is not in accordance with law because it does not rest on a predicate material injury as required by 19 U.S.C. § 1675a(a)(1)(A), and that (2) it is unsupported by substantial evidence because the Commission improperly considered imports of non-subject merchandise. Neither argument is availing.

### I.    The Five-Year Determination is in Accordance With Law

Erdemir first argues that the Commission could not have lawfully determined (as it did) that revoking the Antidumping Order "would be likely to lead to continuation or recurrence of material injury." Pl.'s Br. at 18 (quoting 19 U.S.C. § 1675a(a)(1)). This, Erdemir asserts, is because the Amended Antidumping Determination's negligibility finding with respect to

Colakoglu rendered the Commission's <u>Original Determination</u> inoperative as a means of establishing a material injury by any Turkish producer of subject merchandise—and that without an underlying material injury, there can be no "continuation or recurrence" of that injury as a matter of law.  <u>See</u> 19 U.S.C. § 1675a(a)(1)(A).  In a nutshell: "The Commission cannot find that material injury is likely to continue or recur because of subject Turkish imports—which were negligible during the [Period of Investigation]—did not previously cause material injury."  Pl.'s Br. at 23.

This argument falters because the Commission's <u>Original Determination</u> remains a final and binding agency action.  Erdemir did not challenge it by the appeal deadline, and separate litigation related to Erdemir's petitions for reconsideration and a changed circumstances review of the <u>Original Determination</u> is currently pending before another judge of this court.  <u>See</u> <u>Eregli Demir ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n</u>, Court No. 22-349 (CIT filed Dec. 26, 2022); <u>see also</u> <u>Eregli Demir ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n</u>, Court No. 22-350 (CIT filed Dec. 26, 2022).  (Oral argument in those cases took place on June 13, 2024).  Accordingly, despite possible tension with Commerce's <u>Amended Antidumping Determination</u>,[4] the <u>Original Determination</u> remains a current statement of the Commission's determination that "an industry in the United States is materially injured by reason of subject imports" of dumped hot-rolled steel from Turkey.  <u>Original Determination</u> at 52.  The <u>Original Determination</u> establishes a predicate material injury—a "condition precedent," as Erdemir styles it, Pl.'s Br. at 21—from which the Commission may lawfully find that a

---

[4] The court need not, and does not, reach the issue of whether the <u>Amended Antidumping Determination</u> is ultimately reconcilable with the <u>Original Determination</u>.

"continuation or recurrence" will "likely" ensue.[5]

The court declines Erdemir's suggestion that it treat elements of the <u>Original Determination</u> as having been "nullifie[d]" by Commerce's subsequent <u>Amended Antidumping Determination</u>. Pl.'s Br. at 23. Doing so would deprive all interested parties, including Erdemir, of the ability to ascertain the present legal effect of the Commission's <u>Original Determination</u> by reference to its published text. This, in turn, would upset the basic principles of finality and certainty that underlie administrative law. <u>See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.</u>, 435 U.S. 519, 554–55, (1978) (quoting <u>Interstate Com. Comm'n v. Jersey City</u>, 322 U.S. 503, 514–15 (1944)); <u>see also ThyssenKrupp Acciai Speciali Terni S.p.A. v. United States</u>, 603 F.3d 928, 934 (Fed. Cir. 2010) ("Parties to a proceeding have an interest in relying on final decisions of adjudicatory bodies.").

Preserving the legal effect of final and unrevoked administrative determinations is particularly important in the trade context, where special complexities heighten the need for beacons of certainty. The administration of U.S. trade remedy laws involves the coordinated behavior of several agencies. This behavior is iterated, and not synchronously: Commerce may

---

[5] All parties rest aspects of their arguments on the <u>Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act</u>, H.R. Doc. No. 103-316, vol. I, <u>reprinted in</u> 1994 U.S.C.C.A.N. 4040 ("<u>SAA</u>"). Erdemir asserts that the SAA "carries authoritative weight." Pl.'s Reply at 10 n.3 (quoting <u>AK Steel Corp. v. United States</u>, 226 F.3d 1361, 1368 (Fed. Cir. 2000)). The statutory provision to which this quoted language refers, however, does not elevate the SAA to the status of a statute. <u>See</u> 19 U.S.C. § 3512(d). It limits the authority of the SAA to "judicial proceeding[s] in which a question arises concerning . . . interpretation or application" of the Uruguay Round Agreements Act. <u>Id.</u> And no argument in this case, as briefed by the parties, turns on such a question of interpretation or application. <u>Cf. AK Steel</u>, 226 F.3d at 1367 (invoking the SAA to analyze, through close statutory interpretation, the effect of Congress's revision of a statute). Accordingly, the court does not consider the SAA in reaching its decision in this case. Nor would such consideration be necessary to the court's disposition.

conduct annual administrative reviews of its determinations, and the Commission conducts five-year sunset reviews like the one Erdemir challenges in this case. Judicial review complicates matters even further, as do court-ordered remand redeterminations—which take time to prepare and may themselves be remanded. See, e.g., Green Farms Seafood Joint Stock Co. v. United States, 48 CIT __, __, Slip Op. 24-46, at 1 (Apr. 17, 2024) (remanding, in a case involving two consolidated challenges, Commerce's determination in the seventeenth administrative review of an antidumping order that was originally issued in 2003). The result is that tracing the determinations underlying a given antidumping or countervailing duty order—each of which represents a "consummation of the administrative process," Chicago & S. Air Lines v. Waterman S. S. Corp., 333 U.S. 103, 113 (1948), can be a perplexing endeavor. A party seeking to understand its obligations and preserve its rights must keep track of a host of administrative and judicial developments. See, e.g., Goodluck India Ltd. v. United States, 47 CIT __, __, 670 F. Supp. 3d 1353, 1379–80 (2023).

It is thanks to administrative finality that this task is merely difficult and not impossible. When Commerce or the Commission issues or revokes a determination, it must describe the nature and grounds of its decision. See 19 U.S.C. §§ 1677f, 1673d(d). This means that even though a particular duty order may rest a complex network of agency actions, the network remains susceptible to analysis as a set of discrete, indexed, and outwardly legible components—each of which, unless further modified or superseded, can be safely relied on as an order from which "rights or obligations have been determined or legal consequences will flow." Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970).

The approach Erdemir urges the court to adopt would leave navigators of the trade law labyrinth without this crucial navigational thread. An interested party could not simply look to a Commission material injury determination as a controlling statement of the legal effects that flowed at the time of issuance. Instead, those effects would be subject to retroactive, undefined revisions and nullifications by subsequent non-Commission determinations—which, like the Amended Antidumping Determination, do not purport to automatically execute a change in the Commission's material injury determination.

Treating the Amended Antidumping Determination as a de facto amendment to the Original Determination would also frustrate the administrative scheme that Commerce and the Commission are jointly charged with administering. As the court recognized early on, "[t]he very strict controls on administrative review of prior determinations . . . are [a] good indication that Congress did not want these determinations to remain in a state of flux". Royal Bus. Machines, Inc. v. United States, 1 CIT 80, 87 n.18, 507 F. Supp. 1007, 1014 n.18 (1980), aff'd, 669 F.2d 692 (C.C.P.A. 1982). Pursuing "what the court perceives to be the best or correct result would render judicial review totally unpredictable." PSC VSMPO-Avisma Corp. v. United States, 688 F.3d 751, 761 (Fed. Cir. 2012) (quoting Vt. Yankee, 435 U.S. at 546) (internal quotation marks omitted).

If Commerce determinations could impliedly divest Commission determinations of their legal effect, parties (and the court) would be left to guess as to whether a divestment has occurred—and, if it has occurred, what its boundaries are. Sophisticated actors can make sophisticated guesses, but at the level of complexity typical of trade remedy–related determinations there is simply no way to deduce the totality of downstream legal consequences. Ascertaining those

consequences is the province of litigation, not divination: if a party wants to cut off the legal effect

of a past determination that it alleges is irreconcilable with subsequent determinations, it can sue

for that remedy.  Otherwise, the past determination remains in force.

Consider the nuances of the legal effect that Erdemir attributes to the Amended

Antidumping Determination.  It is not a "straightforward mathematical adjustment."  NTN Bearing

Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995).  Erdemir argues that if Commerce

calculates a de minimis dumping margin for Colakoglu, the Commission should consider all

remaining entries dumped by other Turkish importers to be negligible.  Pl.'s Br. at 19.  Erdemir

further insists that if the Commission makes a negligibility determination for all Turkish importers

on the basis of Commerce's finding that Colakoglu's countervailable subsidies are de minimis, the

Commission must also make a parallel negligibility determination for all Turkish importers upon

Commerce's amended finding that Colakoglu's dumping margin is de minimis.  Id.  Along the

way, Erdemir implies that a de minimis dumping margin (as defined by 19 U.S.C. § 1673b(b)(3))

necessarily compels the Commission's finding of negligibility as provided in 19 U.S.C.

§ 1673d(b)(1)(B).

This is a non-obvious line of reasoning: erroneous or not, it is at the very least unclear

without the aid of substantial explanation.  And Erdemir effectively[6] asks the court to retroactively

---

[6] Erdemir argues that "[t]he Commission, in declining to initiate the [changed circumstance
review] on grounds of duplicativeness, essentially wrote into the sunset review the mandate to
consider the impact of the changed circumstances, i.e., the Colakoglu exclusion, and then
proceeded to ignore its own mandate."  Pl.'s Supp. Br. at 3.  Whether this is a valid imputation or
not, such "writing-in" is beyond the Commission's power.  The Commission cannot replace by
declaration the parameters of a review that Congress has imposed through legislation.  See Civ.
Aeronautics Bd. v. Delta Air Lines, Inc., 367 U.S. 316, 334 (1961) ("[W]e think that both
administrative and judicial feelings have been opposed to the proposition that the agencies may
expand their powers of reconsideration without a solid foundation in the language of the statute.").

incorporate its conclusions into the <u>Original Determination</u> without any kind of administrative proceeding or notice.  This of course is an action that the Commission itself is not even authorized by statute to perform, and the court declines to treat it as completed.  If Erdemir wishes to sap the <u>Original Determination</u> of the force that establishes a "condition precedent" material injury, it must challenge (or have challenged) the <u>Original Determination</u> itself.  That course of action would give the Commission a chance to consider Erdemir's negligibility arguments in the first instance.

The court observes that Erdemir has separately petitioned the Commission for reconsideration of the <u>Original Determination</u> and for the initiation of a changed circumstance review.  Although the Commission denied both petitions, Erdemir has challenged both denials in separate actions before the CIT.  <u>See</u> <u>Eregli Demir</u>, Court No. 22-349; <u>Eregli Demir</u>, Court No. 22-350.  The court in this case expresses no view as to the potential disposition of those actions, which (as noted above) are before a different judge.  The court merely observes that if Erdemir hopes to arrest the continuing legal effects of an <u>Original Determination</u> that it asserts is out of date, there exist more suitable channels for that endeavor than the one it has chosen here.

This is accordingly not a circumstance where "equity will, for the purposes of justice, treat that to have been done, which ought to have been done."  <u>Taylor v. Longworth</u>, 39 U.S. 172, 177 (1840) (Story, J.).

## II.    *The Five-Year Determination is Supported by Substantial Evidence*

Erdemir also challenges the Commission's exercise of discretion to cumulatively assess

---

It may be (although the court does not entertain the question here) that the Commission erroneously declined to initiate a changed circumstance review.  <u>See</u> <u>Eregli Demir</u>, Court No. 22-350. Erroneous or not, however, that decision does not broaden the statutory scope of the Commission's sunset review.

(that is, "cumulate") imports of subject merchandise alongside imports from other countries. Erdemir argues that the cumulation determination is unsupported by substantial evidence and should accordingly be held unlawful pursuant to 19 U.S.C. § 1516a(b)(l)(B)(i).  This, Erdemir alleges, is because the Commission improperly considered Colakoglu's non-subject imports in finding that Turkish imports of subject merchandise would not be "likely to have no discernible adverse impact on the domestic industry."  See Pl.'s Br. at 24; 19 U.S.C. § 1675a(a)(7).  According to Erdemir, "[a]ny analysis including Colakoglu's non-subject imports is in error and cannot provide record support for the Commission's findings or conclusions."  Pl.'s Br. at 26.

This argument is without merit because (1) the Commission did not consider Colakoglu's non-subject imports as support for its discernible-adverse-impact finding and (2) the Commission reasonably concluded that likely imports of subject merchandise from Turkey—even without Colakoglu's sales—would clear the low threshold for discernibility.

### A.    The Commission did not Consider Colakoglu's Data in its Cumulation Analysis

Although Erdemir's brief refers generally to a "cumulation analysis,"[7] the Commission's determination to cumulate actually rests on two separate statutorily mandated inquiries.  19 U.S.C. § 1675a(a)(7).  Before exercising its discretion to cumulatively assess imports, the Commission must assess (1) whether the imports to be cumulated are "likely to compete with each other and

---

[7] As noted above, the Commission's task in a Five-Year review of a duty order is to determine whether "revocation of [the] order . . . would be likely to lead to a continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(1).

Court No. 22-00351                                                                                                                          Page 21

with domestic like products in the United States market,"[8] and (2) whether the imports are "likely to have no discernible adverse impact on the domestic industry."  Id.  The statute's text confirms that these are independent prerequisites.[9]

In the proceeding before the Commission, Erdemir asserted that the second "no discernible impact" prerequisite was not satisfied.  See Erdemir's Posthearing Br. at 14.  The Commission summarized this challenge and responded to it as follows:

> Regarding Erdemir's argument that, since imports of hot-rolled steel from Colakoglu are not subject merchandise in these reviews, subject imports from Turkey will not have a discernible adverse impact, we disagree.  Given the relative attractiveness of the U.S. market and the Turkish industry's excess capacity, we find that it is not likely that there will be no discernible adverse impact if the antidumping duty order on hot-rolled steel from Turkey is revoked even if exports from Colakoglu are no longer subject merchandise.

Public Views at 48 n.298; Confidential Views at 68 n.298.  The Commission supported its reference to the attractiveness of the U.S. market with a discussion of four points:  the average unit value of shipments from Turkey to the United States, the acknowledgment of a respondent in its Foreign Producer Questionnaire Response that the U.S.'s market offers higher prices than other

---

[8] The Commission's practice in carrying out this statutory mandate is to undertake what it terms a "conditions-of-competition" analysis.  See Nucor Corp. v. United States, 601 F.3d 1291, 1296 (Fed. Cir. 2010).

[9] 19 U.S.C. § 1675a(a)(7) provides as follows:

> [T]he Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews . . . were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market. The Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry.

Id.

countries' markets, the trend in Erdemir's export volume during the investigation underlying the

Original Determination, and the fact that Turkish imports of hot-rolled steel are subject to an

antidumping order in the European Union.  See Public Views at 47–48; Confidential Views at 68.

The Commission supported its reference to the Turkish industry's excess capacity with a

discussion of Turkish producers' reported excess capacity in 2021 and an individual non-

Colakoglu respondent's plan to expand capacity for 2023.  See Public Views at 46–47;

Confidential Views at 67–68.

        None of these factors involved Colakoglu's U.S. sales of non-subject merchandise.  While

the Commission did reference data collected during the original investigation—that is, before

Colakoglu's imports lost their status as subject imports following the Amended Antidumping

Determination—the Commission generally employed those references either as background[10] or

as a means of establishing an illustrative comparison with data collected during the review

underlying the Five-Year Determination.  See id. at 67.  In the one instance where the Commission

did apparently directly rely on Original Determination data, that data pertained to a trend in the

commercial activity of Erdemir alone.  See id. at 68.  At no point did the Commission directly rely

on a data set that includes Colakoglu's pre-exclusion imports as a basis for its negative "no

discernible adverse impact" finding.  See id. at 64–68.  As the Commission stated, "Colakoglu is

no longer a producer of subject merchandise and data for it is not included in the data for subject

---

[10] Erdemir asserts that "[i]n the very first sentence of the Commission's cumulation analysis for Turkey [the Commission] included Colakoglu's non-subject imports in a review of subject import volume from Turkey."  Pl.'s Br. at 25.  But the fact that the Commission referenced this information early on—by way of background, as context later clarifies—does not mean that the Commission relied on Colakoglu's data from the Original Determination in reaching its discernible-adverse-impact finding for the Five-Year Determination.

imports from Turkey during the current review." Id. at 64 n.276.

### B.    The Commission Reasonably Concluded that Turkish Hot-Rolled Steel Imports Would Not Have No Discernible Adverse Impact on Domestic Industry

Erdemir argues that without the "taint" of Colakoglu's data, the Commission could not have lawfully determined that Turkish hot-rolled steel imports would not have no discernible adverse impact on U.S. industry. See Pl.'s Reply at 20. This, Erdemir suggests, is because the collective value of non-Colakoglu imports during the review period underlying the Five-Year Determination was too low to effect a discernible impact. See id.; see also Pl.'s Br. at 29–30. Erdemir raised the same argument during the Commission proceeding below: without factoring in Colakoglu's imports, Erdemir argued, "[Hot-rolled steel] imports from Turkey have remained limited . . . with no expectation of increased imports from subject Turkish producers." Erdemir's Post-Hr'g Br. at 14–15.

Discernibility, however, is a low bar. "[S]atisfying the 'no discernible adverse impact' element of the cumulation determination merely requires a finding that a set of imports clears a baseline discernability threshold for adverse impact." Cleveland-Cliffs Inc. v. United States, 48 CIT __, __, Slip Op. 24-34, at 21–22 (Mar. 20, 2024) (citing Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1379 n.6 (Fed. Cir. 2007)). An impact need not even inflict material injury—that is, "harm which is not inconsequential, immaterial, or unimportant," 19 U.S.C. § 1677—to be discernible. See Usinor v. United States, 28 CIT 1107, 1123, 342 F. Supp. 2d 1267, 1281–82 (2004). Accordingly, as the court "may not reweigh the evidence or substitute its own judgment for that of the agency," id. at 1111, the court concludes that the Commission cited "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" when it

rejected Erdemir's preferred weighting.  <u>Broadcom</u>, 28 F.4th at 249 (internal quotation marks and

citation omitted).

> ### C.    *The Commission's Determination to Cumulate Turkish Imports Is Reconcilable With its Determination not to Cumulate Brazilian Imports*

In the <u>Five-Year Determination</u>, the Commission declined to cumulate imports of hot-

rolled steel from Brazil.  Erdemir argues that this presents an inconsistency:  "[t]he Commission's

failure to exclude Colakoglu's non-subject imports from its baseline analysis of investigation data

tainted the cumulation analysis such that it cannot be reconciled with the Commission's decision

not to cumulate subject imports from Brazil."  Pl.'s Br. at 31.

Even assuming the validity of Erdemir's predicate assertion that the Commission's analysis

was "tainted" (an assertion which, as explained above, the court finds unpersuasive), Erdemir's

argument is misplaced.  Here, Erdemir challenges only the Commission's finding that subject

imports from Turkey would not inflict no discernible impact on U.S. industry.  But when the

Commission conducted the same discernible-impact inquiry regarding imports from Brazil, the

Commission also found discernibility.  <u>See</u> Public Views at 32, Confidential Views at 44.  These

findings are not just reconcilable—they are the same.  The Commission declined to cumulate

Brazilian imports for the entirely distinct reason that "subject imports from Brazil would not be

likely to compete under similar conditions of competition with subject imports from other subject

countries . . . ."  Public Views at 59, Confidential Views at 86.

Erdemir claims that "[t]he Commission's division of the cumulation analysis between 'no

discernible adverse impact' and 'conditions of competition' is effectively meaningless given the

similarity of analysis between the two."  Pl.'s Br. at 34.  That is not so.  For one thing, the

Commission does not divide its cumulation analysis on its own initiative.  Section 1675a(a)(7)

requires separate and independent inquiries.  It is possible, for example, that imports that do not "compete with each other and with domestic like products in the United States market" could nevertheless inflict a "discernible adverse impact on the domestic industry."  Id.; see, e.g., Allegheny Ludlum, 30 CIT at 2000.

The two inquiries also involve different metrics.  In a conditions-of-competition inquiry, the Commission assesses the degree of similarity among markets that export subject merchandise. See id. at 19–20; see also U.S. Steel Corp. v. United States, 36 CIT 1172, 1177–78 (2012), 856 F. Supp. 2d 1318, 1324, aff'd, 550 F. App'x 893 (Fed. Cir. 2014) (noting that the Commission "thoroughly examined and identified potential differences in conditions of competition relating to export orientation, historic volume trends, export market focus, and historic pricing patterns").  In the discernibility analysis, the Commission looks not to difference but whether the imports in question clear a low threshold of discernibility.  See Nippon Steel, 494 F.3d at 1379 n.6; Allegheny Ludlum, 30 CIT at 2000 ("In its determination of whether imports are likely to have no discernible adverse impact on the domestic industry, the Commission generally considers the likely volume of subject imports . . . .").  Even though the Commission's analyses of these metrics may rest on overlapping data, see Pl.'s Br. at 31, it does not follow that data which cuts against a finding of similar conditions of competition must also cut against a finding of discernibility.  Import volume is only one of the many axes along which conditions of competition can differ.

For this reason, the court concludes that the Commission's cumulation of imports from Turkey is not irreconcilable with its determination not to cumulate imports from Brazil.

Court No. 22-00351                                                        Page 26

**CONCLUSION**

The aspects of the Commission's <u>Five-Year Determination</u> that Erdemir challenges are in accordance with law and supported by substantial evidence. The court concludes that (1) Commerce's <u>Amended Antidumping Determination</u> did not foreclose an affirmative material injury determination as to Turkey in the Commission's sunset review and that (2) the Commission's determination to cumulatively assess subject Turkish imports of hot-rolled steel is supported by substantial evidence.

The Commission's <u>Five-Year Determination</u> is sustained. Judgment on the agency record will enter accordingly for Defendant and Defendant-Intervenors.

**SO ORDERED**.

<u>/s/      *Gary S. Katzmann*   </u>
Gary S. Katzmann, Judge

Dated: <u> June 20, 2024</u>
        New York, New York